UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JEREMY H. BATTLE, | ) | CIVIL NO. 3:23-CV-00666 |
| Plaintiff | ) | |
| | ) | (MUNLEY, D.J.) |
| v. | ) | |
| | ) | (ARBUCKLE, M.J.) |
| SALVATORE MARCHESE, *et al.*, | ) | |
| Defendants | ) | |

## REPORT AND RECOMMENDATION

## I.    INTRODUCTION

Plaintiff Jeremy H. Battle sues three Police Officers, alleging numerous violations of his constitutional rights pursuant to 42 U.S.C. § 1983. These claims stem from an incident where Officers found Plaintiff experiencing a narcotics overdose and the resulting aftermath.

## II.    BACKGROUND AND PROCEDURAL HISTORY

This *pro se*, *in forma pauperis* action began on April 21, 2023, when Plaintiff lodged his Complaint. (Doc. 1). On the same day, Plaintiff filed a Motion to Proceed *in forma pauperis*, (Doc. 2), which the Court granted on April 27, 2023, (Doc. 7). On July 18, 2023, the Court screened Plaintiff's Complaint pursuant to 28 U.S.C. § 1915(e), finding that it failed to state a claim upon which relief could be granted, and gave Plaintiff leave to file an amended complaint. (Doc. 10).

On August 18, 2023, Plaintiff filed his Amended Complaint. (Doc. 11). Plaintiff names three Defendants in his Amended Complaint:

      1.      Salvatore Marchese (Chief of Police, Dunmore Police Department);

      2.      Linsay Zarick (Dunmore Police Officer); and

      3.      Daniel Kapacs[1] (Dunmore Police Officer).

*Id.*

Plaintiff alleges that on October 14, 2020, at approximately 8:15 p.m., he was found in the driver's seat of a vehicle owned by his friend Susan Lauff by "Dunmore Police Officer and Defendant Zarick speaking lethargically." (Doc. 11, p. 2). Plaintiff asserts that he was experiencing a narcotics overdose at the time. (Doc. 11, p. 5). After dispatching for Emergency Medical Services ("EMS"), Zarick patted down Plaintiff and seized his property. (Doc. 11, p. 2).

Before EMS arrived, Plaintiff alleges that Zarick and her partner Kapacs pulled him from the vehicle onto the pavement. (Doc. 11, p. 2). Zarick then went to her patrol car and retrieved an "epic pen." *Id*. Plaintiff alleges Zarick did not know how to administer the EpiPen and asked Kapacs if he did. *Id*. Kapacs then acted as if knew how to use the EpiPen and grabbed the device from Zarick. *Id*. Plaintiff was then rolled onto his left side and the EpiPen was used on his right torso, causing the medication to be injected into Plaintiff's right lung. *Id*. Plaintiff began to vomit and experienced a sharp pain in his lower back side which cause him to seize and

---

[1] Plaintiff incorrectly identified Kapacs as "Kapous" in his Amended Complaint. (Doc. 11). We use the correct name provided by Defendants throughout this Report and Recommendation.

temporarily lose consciousness. *Id*. When Plaintiff woke up, he was vomiting and was rolled onto his back by Kapacs and Zarick while still vomiting. *Id*. As a result, Plaintiff alleges he was diagnosed with aspiration pneumonia. *Id*.

When EMS arrived on scene, they asked Kapacs and Zarick whether they had done anything to Plaintiff. (Doc. 11, p. 3). Plaintiff alleges they blatantly lied about what they had done, denying rendering any aid to Plaintiff, and that when they did so it shocked his conscience. *Id*.

Kapacs then rode in the ambulance with Plaintiff and insisted on commencing a search of Plaintiff after he had turned off his body camera and before he told Plaintiff he was being arrested. (Doc. 11, p. 4). Plaintiff alleges that while in the back of the ambulance he knew he could not leave even if he had been physically able to. *Id.* Plaintiff alleges Kapacs searched his genitals while he was being transported to the hospital. *Id*.

Plaintiff was hospitalized following the incident, and placed in a coma for three days, "within the hospice unit of G.C.M.C. Geisinger Community Medical Center in Scranton Pennsylvania." (Doc. 11, p. 4). Plaintiff alleges he was told by a doctor that as a result of Kapacs and Zarick's use of the EpiPen and rolling him on his back while he was vomiting, he suffered a collapsed lung and aspiration pneumonia. *Id*.

Plaintiff alleges he was told by medical staff that he was not allowed to leave because he had been arrested by Kapacs and Zarick, who were to be informed of his awakening and when he recovered from his injuries. (Doc. 11, p. 4). Plaintiff began to get up to leave the hospital anyway and found that his belongings had been seized by Kapacs and Zarick. *Id*. Plaintiff attempted to leave the hospital but was tackled by a female nurse, sedated, and tied to a gurney until Scranton Police Officer Gregory S. Garvey arrived. (Doc. 11, p. 5). Plaintiff was charged with F2 aggravated assault and criminal mischief. *Id*. Officer Garvey confirmed for Plaintiff that Kapacs and Zarick had arrested him on October 14, 2020, and had charged him with possession with intent to manufacture and intention to possess a controlled substance by a person not registered. *Id*.

Plaintiff was then transported by the Scranton Police Department to Lackawanna County Courthouse where he was arraigned on the drug charges "by Officer [Kapacs] himself." (Doc. 11, p. 5). Following his arraignment Plaintiff was booked into Lackawanna County Prison ("LCP") on October 17, 2020. *Id*.

After he was released from LCP, Plaintiff went to the Dunmore Police Department ("DPD") to pick up his property and to file a complaint against both Defendants Kapacs and Zarick.[2] (Doc. 11, p. 6). Plaintiff was greeted by Defendant

---

[2] It is unclear from the Amended Complaint when Plaintiff was released from Lackawanna County Prison.

Marchese, the Chief of Police, "who was in complete denial" of what Kapacs and Zarick had done to Plaintiff. (Doc. 11, p. 7). Plaintiff requested the first and last name and badge number of Kapacs and Zarick, but Marchese "hindered or withheld" that information from Plaintiff. *Id*. Marchese allegedly told Plaintiff that "he's giving [Plaintiff] nothing," and handed Plaintiff the clothes he had been wearing on October 14, 2020. *Id*. Plaintiff continued to ask Marchese for the information so he could file a complaint and Marchese then threatened Plaintiff, telling him that if he did not leave or get off the property he would be arrested. *Id*. Plaintiff asked Marchese for his phone and wallet which had been seized and Marchese then threatened Plaintiff again and told Plaintiff his attorney could come get the phone and wallet. *Id*.

Plaintiff asserts that Kapacs and Zarick were not properly trained and subjected him to excessive force, resulting in his collapsed lung and pneumonia, when they improperly injected him with the EpiPen and placed him on his back while vomiting. (Doc. 11, p. 4). Plaintiff asserts that he was subjected to an unreasonable search and seizure, that Kapacs and Zarick had no probable cause to believe Plaintiff had committed a crime, that he was falsely arrested and that he was deprived his due process and equal protection rights on October 14, 2020. (Doc. 11, p. 5). Plaintiff believes that he should have been immune from charges and prosecution relating to the drug charges under the "Pennsylvania Response

Immunity Act."[3] (Doc. 11, p. 6). Plaintiff also asserts that he was deprived of his First Amendment right to freedom of speech when Marchese would not give him the information he sought and threatened to arrest him. (Doc. 11, p. 7).

In his Amended Complaint, Plaintiff numbers eleven "claims" he is asserting under 42 U.S.C. § 1983. We will discuss the claims Plaintiff brings further below. As relief Plaintiff requests monetary damages, punitive damages, that Defendants be "brought forth to justice," and a copy of Kapacs and Zarick's body camera footage. (Doc. 11, p. 8).

On December 5, 2023, Defendants filed a Motion to Dismiss. (Doc. 27). On December 19, 2023, Defendants filed a Brief in Support of their Motion. (Doc. 30). On January 10, 2024, Plaintiff filed a Brief in Opposition of that Motion. (Doc. 32). On January 24, 2024, Defendants filed a Reply Brief. (Doc. 33). On March 8, 2024, Plaintiff, without leave of Court, filed a Sur Reply brief. (Doc. 34). After seeking and being granted leave to file a sur sur reply brief, Defendants filed their Sur Sur Reply Brief on April 5, 2024. (Doc. 37).

On September 30, 2024, Plaintiff filed a Motion to Amend his amended complaint, (Doc. 40), that we deemed withdrawn because Plaintiff failed to file a brief in support or a proposed copy of the second amended complaint.

---

[3] *See* 35 Pa. C.S. § 780-113.7.

## III.  LEGAL STANDARDS

### A.  MOTIONS TO DISMISS FOR FAILURE TO STATE A CLAIM UNDER RULE 12(B)(6) OF THE FEDERAL RULES OF CIVIL PROCEDURE

Rule 8 of the Federal Rules of Civil Procedure explains that to state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief."[4] This standard "does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."[5] Thus, a complaint that contains only "labels and conclusions," or a "formulaic recitation of the elements of a cause of action" is insufficient.[6]

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes a defendant to move to dismiss for "failure to state a claim upon which relief can be granted."[7] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."[8] Facial plausibility is achieved "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[9] Plausibility does not require probability but the litigant must show "more

---

[4] Fed. R. Civ. P. 8(a)(2).
[5] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted).
[6] *Id.*
[7] Fed. R. Civ. P. 12(b)(6).
[8] *Iqbal*, 556 U.S. at 678.
[9] *Id.*

than a sheer possibility that a defendant has acted unlawfully."[10] Facts "merely consistent with" liability do not satisfy this standard.[11]

At the motion to dismiss stage, the court accepts the complaint's factual allegations as true, but the court does not accept a plaintiff's legal conclusions.[12] In addition, "[d]etermining whether a complaint states a plausible claim for relief" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[13]

The federal pleading standard just described requires that district courts conduct the following analysis when addressing a motion to dismiss a complaint:

> First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. [*Iqbal*, 129 S.Ct. at 1949]. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." *Id.* at 1950. In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts. *See Phillips*[ *v. Cnty. Of Allegheny*, 515 F.3d 224, 234–35 (3d Cir. 2008)].[14]

---

[10] *Id.*

[11] *Id.*

[12] *Id.* ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

[13] *Id.* at 679.

[14] *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009).

A *pro se* litigant, however, is entitled to have their complaint liberally construed. This requires that we hold the complaint to a less stringent standard than a pleading drafted by a licensed attorney.[15] "Liberal construction of *pro se* pleadings means paying attention to what the litigant has alleged and using common sense."[16] The Court may "apply the relevant legal principle even when the complaint has failed to name it," but cannot supply what plaintiff has not alleged or imagine that unpleaded facts exist.[17]

## IV.   DISCUSSION

Defendants move to dismiss Plaintiff's Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), alleging Plaintiff's Amended Complaint is time-barred by the applicable statute of limitations, fails to comport with Federal Rule of Civil Procedure 8 and fails to state a claim upon which relief can be granted. (Doc. 27).

### A.   PLAINTIFF CANNOT ADD FACTS OR CLAIMS THROUGH HIS BRIEF IN OPPOSITION OR SUR REPLY

In his Brief in Opposition and Sur Reply Brief, Plaintiff alleges new facts, as well as new claims for state created danger, failure to intervene, failure to render

---

[15] *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

[16] *Gindraw v. Sanford*, No. 3:24-CV-65-KAP, 2024 WL 3179781, at *2 (W.D. Pa. June 26, 2024).

[17] *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (quoting *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)); *Gindraw*, 2024 WL 3179781, at *2.

proper medical care and negligence. (Docs. 32, 34). He asserts these new claims were pleaded in the Amended Complaint.[18] We disagree. Plaintiff very specifically enumerated his claims and explicitly stated that he "draw[s] up these 11 stated claims." (Doc. 11, p. 8). None of these new claims appeared in that list. It is well established that a plaintiff cannot amend a pleading through a brief in opposition to a motion to dismiss.[19] Therefore any new facts or claims asserted for the first time in Plaintiff's Brief in Opposition and Sur Reply Brief will not be considered.

B.    **PLAINTIFF'S CLAIMS**

Plaintiff numbers eleven claims in his amended complaint, all brought pursuant to 42 U.S.C. § 1983:

(1)    "Monell Claim;"

(2)    "substantive due process right;"

(3)    "procedural due process right;"

(4)    "due process;"

(5)    "unreasonable search and seizure;"

(6)    "excessive force;"

(7)    "false arrest;"

---

[18] *See* Doc. 32, ¶¶ 9, 10, 12, 41, 42; Doc. 34, ¶ 34.

[19] *Commonwealth of Pennsylvania ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) (quoting *Car Carriers Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984)).

(8)    "malicious prosecution;"

(9)    "individual and official capacity;"

(10)    "equal protection of the law;"

(11)    "freedom of speech."

(Doc. 11, pp. 3-7).

Plaintiff does not truly bring an "individual and official capacity" stand alone "claim," as such a claim does not exist. "Claims under Section 1983 can take two forms: an 'individual capacity' lawsuit, which are those brought against a government official to hold him or her personally liable, and an 'official capacity' action, which seeks to hold the official's government entity liable for actions taken by the official."[20] "Official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent."[21] "Such a suit is properly treated as a suit against the entity."[22] Accordingly, we construe this 'claim' as indicating that Plaintiff is bringing all of his claims against the Defendants in their individual and official capacities.

---

[20] *Roberts v. Pennsylvania*, No. 22-4829, 2023 WL 6278874, at *3 (E.D. Pa. Sept. 26, 2023) (citing *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985)).

[21] *Hafer v. Melo*, 502 U.S. 21, 25 (1991) (quoting *Graham*, 473 U.S. at 165 (quoting *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 n.55 (1978)) (internal quotation marks omitted)).

[22] *Strickland v. Mahoning Twp.*, 647 F.Supp.2d 422, 428 (M.D. Pa. 2009) (citing *Graham*, 473 U.S. at 166).

We find that Plaintiff is bringing a total of four Fourth Amendment claims in his amended complaint. Plaintiff brings a claim for an unreasonable search and because he was being arrested at the time of the unreasonable search, the Fourth Amendment applies to this claim. The Fourth Amendment also applies to Plaintiff's malicious prosecution claim.[23] Plaintiff is also bringing two Fourth Amendment unreasonable seizure claims. First, Plaintiff's false arrest claim is a breed of Fourth Amendment unreasonable seizure claim given a more specific label, which we will continue to use. Second, Plaintiff's claim for excessive force is also a breed of Fourth Amendment unreasonable seizure claim given a more specific label, which we will again continue to use.[24]

Plaintiff refers broadly to bringing claims for the violation of both his procedural and substantive due process rights. We will therefore interpret his amended complaint as asserting a claim for the deprivation of his Fourteenth Amendment procedural due process right and a claim for the deprivation of his Fourteenth Amendment substantive due process rights. Plaintiff also asserts a violation of his Fourteenth Amendment equal protection right and so we interpret the amended complaint as bringing such a claim.

---

[23] *See Thompson v. Clark*, 596 U.S. 36, 43 (2022).

[24] *See Bush v. City of Allentown Police Dep't*, No. CV 24-6337, 2024 WL 5109422, at *3 n.4 (E.D. Pa. Dec. 13, 2024); *Graham v. Connor*, 490 U.S. 386, 395 (1989).

Plaintiff also asserts a violation of his First Amendment right to free speech. He references being retaliated against for exercising his right to free speech and so we will interpret the amended complaint as asserting a First Amendment retaliation claim.

Plaintiff specifically alleges he is bringing a *Monell* claim, and also brings his claims against Defendants in their official capacity. Plaintiff alleges that "due to the defendants [sic] lack of training," the medical aid rendered by Kapacs and Zarick was "insufficient and life threatening." (Doc. 11, pp. 2-3). Therefore, we interpret the amended complaint as bringing a failure to train *Monell* claim.

In sum, we interpret the Amended Complaint as asserting the following § 1983 claims:

(1)    A First Amendment retaliation claim against Defendant Marchese;

(2)    A Fourth Amendment unreasonable search claim against Defendants Kapacs and Zarick;

(3)    A Fourth Amendment excessive force claim against Defendants Kapacs and Zarick;

(4)    A Fourth Amendment false arrest claim against Defendants Kapacs and Zarick;

(5)    A Fourth Amendment malicious prosecution claim against Defendants Kapacs and Zarick;

(6)    A Fourteenth Amendment substantive due process claim against Defendants Kapacs and Zarick;

(7)    A Fourteenth Amendment procedural due process claim against Defendants Kapacs and Zarick;

(8)    A Fourteenth Amendment equal protection of the law claim against Defendants Kapacs and Zarick; and

(9)    A *Monell* failure to train claim.

## C.    CIVIL RIGHTS CLAIMS BROUGHT PURSUANT TO 42 U.S.C. § 1983

"Section 1983 imposes civil liability upon any person who, acting under the color of state law, deprives another individual of any rights, privileges, or immunities secured by the Constitution or laws of the United States."[25] "It is well settled that § 1983 does not confer any substantive rights, but merely 'provides a method for vindicating federal rights elsewhere conferred.'"[26] To prove a claim under § 1983, a plaintiff must establish: (1) a deprivation of a federally protected right; and (2) that the deprivation was committed by a person or persons acting under color of state law.[27] The parties do not dispute whether Plaintiff has pleaded these two elements.

---

[25] *Shuman v. Penn Manor Sch. Dist.*, 422 F.3d 141, 146 (3d Cir. 2005) (citing *Gruenke v. Seip*, 225 F.3d 290, 298 (3d Cir. 2000)).
[26] *Williams v. Pa. Human Rel. Comm'n*, 870 F.3d 294, 297 (3d Cir. 2017) (quoting *Hildebrand v. Allegheny Cnty.*, 757 F.3d 99, 104 (3d Cir. 2014)).
[27] *Woloszyn v. Cnty. of Lawrence*, 396 F.3d 314, 319 (3d Cir. 2005) (quoting *Lake v. Arnold*, 112 F.3d 682, 689 (3d Cir. 1997)).

### D.    STATUTE OF LIMITATIONS

In their Motion to Dismiss and supporting Briefs, Defendants assert that Plaintiff's Amended Complaint must be dismissed because, on its face, it was filed after the expiration of the statute of limitations for his § 1983 claims. (Doc. 30, p. 8). In response, in his Brief in Opposition, Plaintiff alleges, for the first time, that the doctrine of fraudulent concealment applies in this case and so the amended complaint is timely.[28] (Doc. 32). Defendants dispute this in their Reply Brief. (Doc. 33). In his Sur Reply Brief, Plaintiff argues again that the doctrine of fraudulent concealment applies, that the discovery rule applies and, for the first time, that equitable tolling for the wrong forum should be applied to this case. (Doc. 34). Defendants argue in their Sur Sur Reply Brief that equitable tolling for the wrong forum should not apply in this case. (Doc. 37).

"[T]he length of the statute of limitations for a § 1983 claim is governed by the personal injury tort law of the state where the cause of action arose."[29] Plaintiff's claims arose in Pennsylvania. Pennsylvania has a two-year statute of limitations for personal injury caused by tortious conduct, meaning the statute of limitations for a § 1983 claim that arose in Pennsylvania is two years.[30]

---

[28] Plaintiff also states the discovery rule should apply but does not elaborate why. (Doc. 32, ¶ 28).

[29] *Kach v. Hose*, 589 F.3d 626, 634 (3d Cir. 2009) (citing *Wallace v. Kato*, 549 U.S. 384, 387 (2007)).

[30] 42 Pa. C.S. § 5524.

However, "[f]ederal law, not state law, determines when a limitations period begins to run. Under federal law, the statute of limitations runs from the moment that a claim accrues. And a claim accrues when the last act needed to complete the tort occurs."[31]

Finally, "[i]n general, the statute of limitations is raised as an affirmative defense in an answer to a complaint."[32] However, in the Third Circuit, "a statute of limitations defense may be raised in a motion to dismiss pursuant to Rule 12(b)(6) where the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations."[33] "The time bar must be evident on the face of the complaint for the complaint to create a basis for dismissal."[34]

### 1.    Whether Plaintiff's Claims are Time Barred on the Face of the Amended Complaint

We agree with Defendants in part; on the face of the Amended Complaint, some of Plaintiff's claims are time barred. Others, however, are not. "[T]he statute of limitations analysis is not one-size-fits-all. Accrual dates vary based on the legal

---

[31] *Nguyen v. Pennsylvania*, 906 F.3d 271, 273 (3d Cir. 2018) (internal citations omitted).

[32] *Woolley v. Groft*, 520 F.Supp.3d 616, 620-21 (M.D. Pa. 2021), *on reconsideration*, No. 1:20-CV-01887, 2021 WL 1578249 (M.D. Pa. Apr. 22, 2021); *See* Fed. R. Civ. P. 8.

[33] *Id*. (quoting *Robinson v. Johnson*, 313 F.3d 128, 135 (3d Cir. 2002) (internal citation omitted)) (internal quotation marks omitted).

[34] *Perelman v. Perelman*, 545 F. App'x 142, 149 (3d Cir. 2013).

claim."[35]  Determining which of Plaintiff's claims are time barred and which are not requires defining the contours of Plaintiff's claims, taking stock of the dates listed in the Amended Complaint, and determining the accrual date and the date the statute of limitations began to run for Plaintiff's claims.

Only two dates are provided in the Amended Complaint. The first is October 14, 2020. (Doc. 11, p. 11). This was the day of the incident where Plaintiff was arrested and taken to the hospital. The second is October 17, 2020. (Doc. 11, p. 5). This was the day Plaintiff woke up in the hospital, attempted to leave, was arraigned and booked into LCP. Plaintiff asserts that after he was released from LCP he went to the Dunmore Police Department, however Plaintiff does not give the date he was released. Nor is any date provided indicating when, if at all, Plaintiff's related criminal case resolved in his favor.

We will begin our discussion with the claims where the time bar is not evident on the face of the Amended Complaint. Plaintiff brings a malicious prosecution claim, apparently against both Kapacs and Zarick, asserting that they sought "a malicious prosecution against" him. (Doc. 11, pp. 5-6). "A malicious prosecution claim is not cognizable until favorable termination is achieved, because that is when

---

[35] *Donahue v. Lawrence*, No. 1:21-CV-70, 2022 WL 836764, at *4 (W.D. Pa. Mar. 21, 2022).

the 'favorable termination' element of the cause of action is complete."[36] "Only once the criminal proceeding has ended in the defendant's favor, or a resulting conviction has been invalidated within the meaning of *Heck*, will the statute of limitations begin to run."[37] Therefore, the statute of limitations on Plaintiff's malicious prosecution claim began to run, or will begin to run, on the date his criminal case was terminated favorably, or his conviction, if he was convicted, was invalidated. Nowhere in the Amended Complaint does Plaintiff indicate his criminal case was terminated in his favor or his conviction overturned, much less a date either of those occurred on. Accordingly, it is not evident on the face of the Amendment Complaint that Plaintiff's malicious prosecution claim is untimely.

Plaintiff asserts a retaliation claim against Marchese. Plaintiff asserts that after exercising his right to free speech by asking Marchese for Kapacs and Zarick's full names and badge numbers and for his phone and wallet, Marchese retaliated against him by withholding the information and items and threatening Plaintiff that if he did not leave, he would be arrested. (Doc. 11, p. 7). "[T]he statute of limitations for a First Amendment retaliation claim begins to run when [the] alleged retaliatory act

---

[36] *Blake v. Maletz*, No. 24-CV-6249, 2025 WL 321541, at *5 (E.D. Pa. Jan. 28, 2025).

[37] *McDonough v. Smith*, 588 U.S. 109, 119-20 (2019) (citing *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994)) (internal citation omitted) (footnote omitted).

occurs[.]"[38] Here, Defendants assert that "the alleged events giving rise to Plaintiff's claims against Marchese occurred on or about October 17, 202[0]." (Doc. 30, p. 9). Thus, they argue, this claim is time barred on the face of the Amended Complaint. *Id.* However, we do not agree with Defendants that the Amended Complaint alleges any date, on or about, that Marchese's alleged retaliatory acts occurred. In his Amended Complaint, Plaintiff clearly asserts that he was "arraigned" and "[t]hen booked into [LCP] on the 17th day of October 2020." (Doc. 11, p. 5). Plaintiff asserts, "I was arrested charged and pursued maliciously even after experiencing an overdose from the usage of narcotics on the 14th through the 17th of Oct 2020. After being released from Lackawanna County Prison. I went to Dunmore police dept . . . ." (Doc. 11, p. 6). We do not, however, read this as asserting that Plaintiff was released from LCP on or about October 17, 2020. Instead, we read these two sentences as asserting only that, even after suffering from a narcotics overdose from October 14 through October 17, 2020, Plaintiff was arrested, charged and maliciously "pursued," and that upon release on an unknown date he went to DPD. (Doc. 11, p. 6). Plaintiff does not provide the date he was released from LCP, went to DPD, and was retaliated against by Marchese. Because we do not know when Marchese's allegedly retaliatory acts took place, we cannot evaluate when Plaintiff's

---

[38] *Doe v. Hillsborough Twp. Bd. of Educ.*, No. CV 23-22597 (GC) (TJB), 2024 WL 4025865, at *6 (D.N.J. Aug. 30, 2024) (quoting *Evans v. Gloucester Twp.*, 124 F.Supp.3d 340, 351 (D.N.J. 2015)) (internal quotation marks omitted).

retaliation claim accrued or when the statute of limitations began to run. Therefore it is not evident on the face of the Amended Complaint that Plaintiff's retaliation claim is untimely.

Finally, Plaintiff asserts a procedural due process claim against Kapacs and Zarick. (Doc. 11, p. 3). After discussing being injected with the EpiPen by Kapacs and Zarick and seeing them lie to the EMS who arrived, Plaintiff alleges that "procedures available to me there and after did not provide due process of law." *Id.* From there, Plaintiff concludes that Kapacs and Zarick violated his due process rights and that Kapacs "completely deprived me of an individual interest that is encompassed within the 14th Amendment protection" with no factual development related to what process he was due and did not receive or how the procedures "there and after" did not sufficiently provide due process. *Id.* "A procedural due process violation is not complete when the deprivation occurs; it is not complete unless and until the State fails to provide due process."[39] "If there is a process that apparently provides adequate procedural remedies, a plaintiff must avail himself of that process before bringing a procedural due process claim."[40] Here, the Amended Complaint does not clearly articulate how Kapacs and Zarick violated Plaintiff's procedural due

---

[39] *Williams v. Krasner*, No. 22-2984, 2023 WL 3773861, at *3 (3d Cir. June 2, 2023) (quoting *Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000)) (internal quotation marks omitted).

[40] *Krasner*, 2023 WL 3773861, at *3.

process right which makes it impossible for the Court to tell whether and when that violation was completed. Without knowing when the violation was completed, the Court cannot determine when Plaintiff's procedural due process claim, to the extent he may have one, accrued. And without knowing when the claims accrued, and when the limitations period began to run, it is not evident from the face of the Amended Complaint that Plaintiff's procedural due process claim is untimely.

We agree with Defendants, however, that it is evident on the face of the Amended Complaint that the remainder of Plaintiff's claims are time barred.

Plaintiff alleges Kapacs and Zarick used excessive force against him when they injected him with an EpiPen in his lung and rolled him on his back when he began vomiting, causing him to suffer a collapsed lung and aspiration pneumonia. "Excessive force claims typically accrue on the date of the alleged assault because, at that point, the plaintiff knows or has reason to know of the injury which is the basis of the section 1983 action."[41]   Plaintiff clearly pleads in his Amended Complaint that Kapacs and Zarick used excessive force against him on October 14, 2020. Thus, October 14, 2020 is the date his excessive force claim accrued and the statute of limitations began running. Plaintiff therefore had two years from October 14, 2020 to file his claims. Plaintiff's Complaint was filed on April 1, 2023, over six

---

[41] *Weaver v. Brozell*, No. 2:23-CV-2116, 2024 WL 4476496, at *4 (W.D. Pa. Oct. 11, 2024) (quoting *Sorokaput v. Fare*, No. 21-2188, 2022 WL 3043154, at *1 (3d Cir. Aug. 2, 2022) (cleaned up)) (internal quotation marks omitted).

months after the two-year statute had run, and so his excessive force claim is untimely.

Likewise, Plaintiff's unreasonable search claim is untimely. Plaintiff pleads that Kapacs unreasonably searched Plaintiff in the back of the ambulance after turning off his body camera when he began searching Plaintiff's genitals while Plaintiff was experiencing a life-threatening event. (Doc. 11, p. 4). Under federal law, a claim for an unreasonable search accrues at "the moment of the search."[42] Here, Plaintiff specifically pleads and it is therefore again evident from the face of the Amended Complaint that the search occurred on October 14, 2020. October 14, 2020 is therefore the date this claim accrued and the statute of limitations began running. Plaintiff thus had two years from October 14, 2020 to file his claims. Again, Plaintiff filed his Complaint on April 21, 2023, over six months after the statute of limitations ran, and so his unreasonable search claim is untimely.

Plaintiff's false arrest claim is also untimely. Plaintiff alleges that he was falsely arrested on October 14, 2020, by Kapacs and Zarick as they had no probable cause to arrest him. (Doc. 11, pp. 4-5). Plaintiff states that on October 17, 2020, Scranton Police Officer Gregory S. Garvey "confirmed I was so arrested on the 14th of October of 2020 by defendants [Kapacs and Zarick]." (Doc. 11, p. 5). "A Fourth Amendment false arrest claim accrues the moment when legal process justifies the

---

[42] *Nguyen* \, 906 F.3d at 273.

detention or, absent legal process, the moment of release."[43] Arraignment is such

legal process.[44] Here, Plaintiff explicitly states that he was arraigned "on the drug

charges" on October 17, 2020. (Doc. 11, p. 5). Accordingly, Plaintiff's false arrest

claim accrued, and the statute of limitations began to run, on October 17, 2020.

Plaintiff filed his Complaint on April 21, 2023, over six months after the two-year

statute of limitations ran, and so his false arrest claim is untimely on the face of the

Amended Complaint.

Plaintiff's substantive due process claim is also untimely. While the contours

of Plaintiff's substantive due process claim are murky, we construe the Amended

Complaint as alleging that his substantive due process right was violated when

Kapacs and Zarick lied to EMS about whether they rendered him any aid. (Doc. 11,

p. 3). Plaintiff asserts that when Kapacs and Zarick "blatantly lied" by telling EMS

they did not render any aid, "it shocked my conscience and clearly stood out to me

that the defendants [Kapacs and Zarick] were being and acting corrupt."[45] *Id.*

---

[43] *Castillo v. Maguire*, No. 3:13-CV-02953, 2020 WL 13199169, at *6 (M.D. Pa. Nov. 2, 2020), *report and recommendation adopted*, No. 3:13-CV-2953, 2022 WL 1122836 (M.D. Pa. Apr. 14, 2022) (quoting *Nguyen*, 906 F.3d at 273) (internal quotation marks omitted).

[44] *Weaver*, 2024 WL 4476496, at *5 (citing *McCracken v. Wells Fargo Bank NA*, 634 F. App'x 75, 79 (3d Cir. 2015)).

[45] Establishing a due process claim requires showing that the government's deprivation of an interest protected by the substantive due process clause "shocks the conscience." *Chambers ex rel. Chambers v. Sch. Dist. Of Philadelphia Bd Of Educ.*, 587 F.3d 176, 190 (3d Cir. 2009) (quoting *Chainey v. Street,* 523 F.3d 200, 219 (3d Cir. 2008)) (internal quotation marks omitted). Plaintiff's use of the

Plaintiff alleges this behavior "was egregious and outrageous which is the exact degree of wrongfulness to reach the conscience shocking level." *Id*. Thus, Plaintiff alleges, Kapacs and Zarick "completely deprived me of an individual interest that is encompassed within the 14th Amendment protection of life, liberty and property." *Id*. "To establish a substantive due process claim, a plaintiff must prove [1] the particular interest at issue is protected by the substantive due process clause and [2] the government's deprivation of that protected interest shocks the conscience."[46] Even assuming *arguendo* that Plaintiff could identify an interest protected by the substantive due process clause and that Plaintiff could show that Kapacs and Zarick's lying did constitute conscience shocking behavior, Plaintiff's claim would nonetheless be time barred. Plaintiff alleges that Kapacs and Zarick's act of lying occurred on October 14, 2020, and that act of lying deprived him of an interest protected by the substantive due process clause. (Doc. 11, p. 3). Accordingly, Kapacs and Zarick completed the last act necessary to deprive Plaintiff of his substantive due process right on October 14, 2020, and so his substantive due process claim accrued on that date and the statute of limitations began to run.[47]

---

conscience shocking descriptor is what allows the Court to construe his substantive due process claim.

[46] *Hazzouri v. W. Pittston Borough*, 416 F.Supp.3d 405, 416 (M.D. Pa. 2019) (quoting *Chambers*, 587 F.3d at 190 (3d Cir. 2009) (quoting *Chainey*, 523 F.3d at 219)) (internal quotation marks omitted) (alternation in original).

[47] *Nguyen*, 906 F.3d at 273 (internal citations omitted).

Plaintiff therefore had two years from October 14, 2020 to bring his substantive due process claim. Plaintiff filed his Complaint on April 21, 2023, more than six months too late, and accordingly it is evident on the face of the Amended Complaint his substantive due process claim is untimely.

Plaintiff also brings an untimely selective-enforcement equal protection claim, asserting that, under Pennsylvania's Drug Overdose Response Act, 35 Pa. C.S. § 780-113.7, he was entitled to immunity and so should not have been arrested or charged, but Kapacs and Zarick arrested and charged him anyway, selectively applying the statute. (Doc. 11, p. 6). "Typically, a selective-enforcement claim will accrue at the time that the wrongful act resulting in damages occurs."[48] Here, Plaintiff clearly alleges in the Amended Complaint that he was arrested and charged on October 14, 2020, and arraigned on October 17, 2020. (Doc. 11, pp. 4-6). Even interpreting the Amended Complaint such that the wrongful act resulting in damages occurred on October 17, 2020, and so his claim accrued and the statute of limitations began to run on that date, Plaintiff filed his Complaint on April 21, 2023, over six months after the statute of limitations ran, and so this claim is untimely.

Plaintiff also brings an untimely *Monell* claim. His *Monell* claim is not well described. Plaintiff asserts that due to Kapacs and Zarick's "lack of training and

---

[48] *Bartley v. New Jersey*, No. 3:18-CV-16283(BRM)(TJB), 2021 WL 3884289, at *3 (D.N.J. Aug. 31, 2021), *aff'd*, No. 21-2748, 2022 WL 1599124 (3d Cir. May 20, 2022).

gross negligence" the aid they rendered to Plaintiff was insufficient and life-threatening, and he should not have been treated with an EpiPen for a narcotic overdose. (Doc. 11, pp. 2-3). Plaintiff then states "in which this claim is stated in pursuant to the *Monell* claim. (Doc. 11, p. 3). Accordingly, we liberally construe Plaintiff as alleging that Dunmore Borough's failure to train Kapacs and Zarick on the proper use of EpiPens and treatment of narcotics overdoses resulted in the use of excessive force against him, the injection of the EpiPen into his lung and rolling him onto his back while he was vomitting.[49] "Like his other Section 1983 claims, [Plaintiff's] *Monell* claim has a two-year statute of limitations" and "accrues on the date of the underlying constitutional violations."[50] As discussed above, Plaintiff's excessive force claim accrued on October 14, 2020 and it is evident on the face of the Amended Complaint that his excessive force claim is time barred. Therefore, Plaintiff's *Monell* claim is likewise time barred on the face of the Amended Complaint.

---

[49] Again, official capacity suits are treated as suits against the entity the officer is an agent of. *Hafer*, 502 U.S. at 25. Further, "a municipality and its police department [are] [] a single entity for purposes of section 1983 liability." *Bonenberger v. Plymouth Twp.*, 132 F.3d 20, 25 n.4 (3d Cir. 1997).

[50] *Weaver*, 2024 WL 4476496, at *6 (citing *Jones v. Gansky*, No. 23-2967, 2023 WL 6881050, at *5 (E.D. Pa. Oct. 17, 2023)).

However, this is not the end of our analysis as Plaintiff, likely realizing his claims are barred by the statute of limitations, argues several tolling doctrines apply in this case making his claims timely.

> **2.    Whether the Statute of Limitations is Tolled Making Plaintiff's Claims Timely**

In certain circumstances the statute of limitations may be tolled, or the defendant estopped from asserting it as a defense. "Unless inconsistent with federal law, state law governs whether the statute of limitations should be tolled."[51] Here, the parties do not assert that Pennsylvania's tolling principles are at odds with federal law and so the Court will apply Pennsylvania's tolling principles to this case.[52]

"The Pennsylvania Supreme Court uses 'equitable tolling' as an 'umbrella' concept, under which the discovery rule and fraudulent concealment fall."[53] In addition to the discovery rule and fraudulent concealment, the Pennsylvania Supreme Court has also recognized that equitable tolling may be appropriate "where a plaintiff [timely] asserts his rights [mistakenly] in the wrong forum."[54] For the

---

[51] *Castillo*, 2020 WL 13199169, at *7 (citing *Dique v. New Jersey State Police*, 603 F.3d 181 (3d Cir. 2010)).

[52] *See Kach v. Hose*, 589 F.3d 626, 643 (3d Cir. 2009) (Plaintiff "has not credibly shown, however, that Pennsylvania law actually conflicts with federal law or policy, as required for federal tolling to apply.").

[53] *Gunn v. Cornell Abraxas Grp., LLC*, No. 2:23-CV-01437-CCW, 2024 WL 4336257 (W.D. Pa. Sept. 27, 2024) (publication forthcoming) (quoting *Riad v. Wells Fargo Bank*, No. 22-1757, 2023 WL 8676234, at *3 (3d Cir. Mar. 23, 2023)).

[54] *Nicole B. v. Sch. Dist. of Philadelphia*, 237 A.3d 986, 996 (Pa. 2020) (citing *Uber v. Slippery Rock University of Pennsylvania*, 887 A.2d 362, 366 (Pa. Commw.

purposes of this Report and Recommendation, we will refer to this theory as "wrong forum tolling."

"At the motion to dismiss stage, a plaintiff who seeks to invoke equitable tolling need only plead the applicability of the doctrine."[55] "[W]hile a court may entertain a motion to dismiss on statute of limitations grounds," it may not require a Plaintiff "to plead, in a complaint, facts sufficient to overcome an affirmative defense."[56] In other words, a court cannot require a plaintiff to plead around an affirmative defense.[57] However, a plaintiff may "effectively plead[] [him]self out of court by alleging facts that are sufficient to establish the defense," making dismissal appropriate.[58]

Plaintiff raises three tolling arguments asserting the statute of limitations for his claims should be tolled pursuant to the discovery rule, fraudulent concealment and wrong forum tolling.

---

Ct. 2005); *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1387 (3d Cir. 1994), *abrogated on other grounds*, by *Rotkiske v. Klemm*, 890 F.3d 422, 428 (3d Cir. 2018) (en banc), *aff'd* 140 S. Ct. 355 (2019)); *Mitwalli v. PA Dep't of Corr.*, 328 A.3d 96, at *3 (Pa. Commw. Ct. 2024); *Krasner*, 2023 WL 3773861, at *3.

[55] *Perelman*, 545 F. App'x at 151 (quoting *Oshiver*, 38 F.3d at 1391) (internal quotation marks omitted).

[56] *Schmidt v. Skolas*, 770 F.3d 241, 251 (3d. Cir 2014) (internal citation omitted).

[57] *Id*.

[58] *Hollander v. Brown*, 457 F.3d 688, 691 n.1 (7th Cir. 2006). *See Schmidt*, 770 F.3d at 251.

i.    *Wrong Forum Tolling*

As an initial matter, Plaintiff has not pleaded any facts in his Amended Complaint that suffice to "plead the applicability of" wrong forum tolling.[59] Nevertheless, we will consider the allegations Plaintiff has made in his Brief in Opposition and Sur Reply Brief regarding wrong forum tolling. Again, the Pennsylvania Supreme Court has also recognized that equitable tolling may be appropriate "where a plaintiff [timely] asserts his rights [mistakenly] in the wrong forum."[60]

Plaintiff asserts for the first time in his Brief in Opposition that, "in attempting to ascertain the cause of injury," he filed "through another court[.]" (Doc. 32, ¶ 29). He alleges this demonstrates that he exercised reasonable diligence in discovering his injuries, apparently for purposes of the Court's analysis of his fraudulent concealment and discovery rule arguments. *Id.* Then, in his Sur Reply Brief, Plaintiff expands upon this and asserts for the first time that Marchese "mislead the plaintiff into going to and through other forums to establish the illegal police misconduct against Plaintiff" and so he filed "within another forum a civil complaint within the statute of limitations with the DOJ of 4-28-22 Record # 155993-Jgb." (Doc. 34, ¶¶

---

[59] *Perelman*, 545 F. App'x at 151 (quoting *Oshiver*, 38 F.3d at 1391) (internal quotation marks omitted).
[60] *Nicole B.*, 237 A.3d at 996 (citing *Uber*, 887 A.2d at 366; *Oshiver*, 38 F.3d at 1387); *Mitwalli*, 328 A.3d 96, at *3; *Krasner*, 2023 WL 3773861, at *3.

16-17). In response, Defendants argue that Plaintiff's assertion he filed in an improper forum should not permit the application of equitable tolling, citing to a 2014 Third Circuit case. (Doc. 37, p. 4). Defendants assert that Plaintiff was not required to exhaust any administrative remedies prior to filing his lawsuit and so any alleged complaint or grievance filed with the Department of Justice has no bearing on the statute of limitations. *Id.* They further assert that no other lawsuit has been filed against them by Plaintiff in any state court or improper forum that asserts the claims brought in the Amended Complaint. *Id*. at p. 5.

Even accepting these new facts in his Brief in Opposition and Sur Reply Brief as true and construing them in the light most favorable to him, Plaintiff does not make adequate allegations that, if they were in his Amended Complaint, would plead the applicability of wrong forum tolling. Again, the Pennsylvania Supreme Court has also recognized that equitable tolling may be appropriate "where a plaintiff [timely] asserts his rights [mistakenly] in the wrong forum."[61] Here, Plaintiff simply does not allege that he asserted his rights in a wrong forum. Instead, Plaintiff alleges that he attempted to use the DOJ complaint he filed to find out further information about the cause of his injuries. Plaintiff writes that he filed with the DOJ in an "attempt[] to ascertain the cause of injury" and "to establish the illegal police

---

[61] *Nicole B.*, 237 A.3d at 996 (citing *Uber*, 887 A.2d at 366; *Oshiver*, 38 F.3d at 1387); *Mitwalli*, 328 A.3d 96, at *3; *Krasner*, 2023 WL 3773861, at *3.

misconduct" against him. (Doc. 32, ¶ 29; Doc. 34, ¶¶ 16-17). Using the DOJ to discover more specific information about his claims is not the same as Plaintiff asserting his legal rights in the wrong forum, which he does not allege. Thus, Plaintiff has not, in any of his relevant filings, pleaded or alleged facts that show even the possibility that wrong forum tolling could apply as he must.[62]

### ii.    Fraudulent Concealment

"Pennsylvania's fraudulent-concealment doctrine is based on a theory of estoppel."[63] "The doctrine tolls the statute of limitations where through fraud or concealment the defendant causes the plaintiff to relax vigilance or deviate from the right of inquiry."[64] "Under the application of the fraudulent concealment doctrine an affirmative or independent act of concealment that would divert or mislead the plaintiff from discovering the injury is sufficient to toll the statute of limitations."[65] "Mistake, misunderstanding, or lack of knowledge in themselves do not toll the

---

[62] *Perelman*, 545 F. App'x at 151 (quoting *Oshiver*, 38 F.3d at 1391) (internal quotation marks omitted).

[63] *Remigio v. Eagle Rock Resort, Co.*, No. 3:21-CV-01756, 2024 WL 1890365, at *9 (M.D. Pa. Apr. 30, 2024) (quoting *Fine v. Checcio*, 870 A.2d 850, 860 (Pa. 2005)) (internal quotation marks omitted).

[64] *Remigio*, 2024 WL 1890365, at *9 (quoting *Mest v. Cabot Corp.*, 449 F.3d 502, 516 (3d Cir. 2006)) (internal quotation marks omitted).

[65] *Tertyshnaya v. Standard Sec. Life Ins. Co. of New York*, 2010 No. 3803, 2013 WL 10573669, at *4 (Pa. Ct. Com. Pl. Dec. 13, 2013) (quoting *Bohus v. Beloff*, 950 F.2d 919, 925 (3d Cir. 1991)) (internal quotation marks omitted). *See also Robinson v. Se. Pennsylvania Transportation Auth.*, 572 F.Supp.3d 136, 152 (E.D. Pa. 2021).

running of the statute."[66] "Additionally, as with the discovery rule, to toll the statute of limitations under the doctrine of fraudulent concealment, the plaintiff must exercise reasonable diligence to discover his injury."[67]

In his Amended Complaint, Plaintiff alleges that Defendant Marchese refused to give him the first and last names and badge numbers of Kapacs and Zarick. (Doc. 11, p. 7). In his Brief in Opposition, Plaintiff asserts that the doctrine of fraudulent concealment applies and so his claims should be timely because Marchese withheld "information and threaten[ed] the plaintiff with arrest for asking for the pertinent information to be able to correctly pursue only out of good faith[.]" (Doc. 32, ¶ 27). In his Sur Reply Brief, Plaintiff again asserts that the doctrine of fraudulent concealment should apply to make his claims timely because Marchese's "withholding and concealing the requested information" meant he could not "correctly pursue" his lawsuit. (Doc. 34, ¶¶ 4, 27, 11, 12). In response, Defendants argue that Plaintiff has failed to set forth any facts that Marchese actively misled Plaintiff or that show Plaintiff exercised due diligence, and that Plaintiff pleaded he was informed he was being arrested on October 14, 2020, and so was aware of any potential claims then. (Doc. 33, pp. 3-4).

---

[66] *Fine*, 870 A.2d at 857 (citing *Nesbitt v. Erie Coach Co.*, 204 A.2d 473, 475 (Pa. 1964); (*Pocono International Raceway, Inc. v. Pocono Produce, Inc.*, 468 A.2d 468, 471 (Pa. 1983).

[67] *Gunn*, 2024 WL 4336257, at *7 (citing *Riad*, 2023 WL 8676234, at *3).

Here, Plaintiff again has not pleaded facts in his Amended Complaint, or asserted facts in his Brief in Opposition or Sur Reply Brief that suffice to plead the applicability of fraudulent tolling. Plaintiff does not allege an affirmative or independent act by Marchese that diverted or mislead him from discovering his injury. Instead, Plaintiff alleges facts that show Marchese did not give him specific information about Kapacs and Zarick. But failing to give him that information, even to the extent it was an affirmative act of concealment, did not prevent Plaintiff from discovering his injury.

In his Amended Complaint Plaintiff affirmatively pleads that he was aware on October 14, 2020 while at the scene and in the back of the ambulance, that when he heard Kapacs and Zarick lie to EMS it shocked his conscience, and that while he was in the back of the ambulance Kapacs stated he was being arrested and began to search him and he knew he could not leave even if he had been physically able to. (Doc. 11, pp. 3-4). Plaintiff further pleads in his Amended Complaint that when he awoke in the hospital on October 17, 2020, he was informed by a doctor that he "suffered a collapsed lung which was from the (excessive force) rendered by the defendants Kapacs and Zarick and had aspiration pneumonia," that medical staff informed him he was not permitted to leave because he had been arrested, that when he attempted to get up and leave the hospital he realized that Kapacs and Zarick took some of his items as a result of searching him, that Garvey confirmed he had been

arrested on October 14, 2020 by Kapacs and Zarick, and that he was taken to the Lackawanna County Courthouse and arraigned. (Doc. 11, pp. 4-5). Plaintiff pleads he went to the DPD specifically to get information on Kapacs and Zarick and "to file a complaint against both defendants Ofc Zarick and [Kapacs] [sic]." (Doc. 11, p. 6). In pleading that he went to DPD to request the first and last names of Kapacs and Zarick Plaintiff pleads he knew he was injured and that he was injured by two DPD Officers. The fact that Plaintiff may not have known, and Marchese would not provide him with, Kapacs and Zarick's exact identities or badge numbers is insufficient to plead the applicability of fraudulent tolling which concerns the discovery of the injury itself.

Accordingly, taking the facts pleaded in the Amended Complaint as true as Plaintiff urges us to do, his injuries and their causes were knowable to him, and indeed he did actually know of his injuries that give rise to his excessive force, unreasonable search, false arrest, substantive due process, equal protection and *Monell* claims, by October 17, 2020, at the latest. Again, this means that even to the extent Marchese affirmatively concealed Kapacs and Zarick's full names and badge numbers, Plaintiff was already aware of his injuries and so Marchese could not have "divert[ed] or mislead" Plaintiff "from discovering [his] injur[ies]" as he already

knew of them.[68] Plaintiff pleaded only that he lacked information about Kapacs and Zarick, but lack of knowledge is not sufficient to toll the running of the statute of limitations.[69] To the extent Plaintiff was unaware of the full names and badge numbers of Kapacs and Zarick, he should have sued "John Doe" defendants and promptly sought discovery on their identities and then moved to include them in the lawsuit. For these reasons Plaintiff has not pleaded the applicability of fraudulent concealment as he must and has instead pleaded facts that show fraudulent concealment does not apply.[70]

### iii.    The Discovery Rule

Under proper circumstances, the discovery rule may apply to a claim and toll the accrual of the statute of limitations. "The discovery rule tolls the statute of limitations during the plaintiff's *complete inability*, due to facts and circumstances not within his control, to discover an injury despite the exercise of due diligence."[71] "A court considering a plaintiff's request to apply the rule must address the ability of the damaged party, exercising reasonable diligence, to ascertain that he has been

---

[68] *Tertyshnaya*, 2013 WL 10573669, at *4 (quoting *Bohus*, 950 F.2d at 925) (internal quotation marks omitted). *See also Robinson v. Se.*, 572 F.Supp.3d at 152.

[69] *Fine*, 870 A.2d at 857

[70] *Perelman*, 545 F. App'x at 151 (quoting *Oshiver*, 38 F.3d at 1391 (internal quotation marks omitted).

[71] *Blanyar v. Genova Prods. Inc.*, 861 F.3d 426, 431-32 (3d Cir. 2017) (quoting *Barnes v. Am. Tobacco Co.*, 161 F.3d 127, 152 (3d Cir. 1998) (quoting *Kingston Coal Co. v. Felton Mining Co.*, 690 A.2d 284, 288 (Pa. Super. Ct. 1997))) (internal quotation marks omitted) (emphasis in original).

injured and by what cause."[72] The Pennsylvania Supreme Court has explained that

"[p]ausing the running of the statute of limitations arises from the inability, despite

the exercise of diligence, to determine the injury or its cause, not upon a retrospective

view of whether the facts were *actually* ascertained within the period."[73] In other

words, if the injury was discoverable upon the exercise of reasonable diligence, it

does not matter whether a plaintiff actually discovered the injury within the

limitations period. "As soon as the plaintiff either has discovered or, exercising

reasonable diligence, should have discovered the injury and its cause, the statute of

limitations begins to run." [74] "While the discovery rule may act to toll the statute of

limitations when a plaintiff does not know he is injured, it is inapplicable in cases

when a plaintiff is merely uncertain who or what caused his injury."[75] Nor does the

---

[72] *Perelman*, 545 F.App'x at 149 (quoting *Fine*, 870 A.2d at 858) (internal quotation marks omitted).

[73] *Rice v. Diocese of Altoona-Johnstown*, 255 A.3d 237, 255 (quoting *Pocono Int'l Raceway*, 468 A.2d at 471-72) (internal quotation marks omitted).

[74] *Mest*, 449 F.3d at 510-11 (citing *Bohus*, 950 F.2d at 925).

[75] *Landau v. Lamas*, No. 3:15-CV-1327, 2019 WL 3521421, at *20 (M.D. Pa. Aug. 1, 2019) (citing *Robinson v. Lowe's Home Ctrs., Inc.*, No. 06-CV-4403, 2007 WL 2739187, at *2 (E.D. Pa. Sept. 19, 2007) ("Uncertainty as to the identity of a defendant is not the sort of lack of knowledge which triggers the discovery rule.")). *See also Bradley v. Conner*, No. 07-cv-1347, 2007 WL 4241846, at *4-5 (W.D. Pa. Nov. 29, 2007) ("State and federal courts in Pennsylvania, applying Pennsylvania law, have expressly rejected application of the discovery rule where a plaintiff merely lacks knowledge as to the defendant's identity.") (citing, *inter alia*, *Cathead v. Keene Indus. Insulation*, 471 A.2d 493, 501 (Pa. Super. Ct. 1984), *abrogated on other* grounds, *Daley v. A.W. Chesterton, Inc.*, 37 A.3d 1175 (Pa. 2012)).

discovery rule apply when the Plaintiff is unaware of the full extent of his injury, the fact of actual negligence or the precise cause of his injury.[76]

Initially, Plaintiff has not pleaded any facts in his Amended Complaint that begin to "plead the applicability of" the discovery rule.[77] Nevertheless we will evaluate his argument with the facts alleged in his Sur Reply Brief.

Plaintiff alleges, for the first time, in his Sur Reply Brief that he did not experience "pain from his injuries until months later" and so the discovery rule applies to toll the statute of limitations. (Doc. 34, ¶ 10). Defendants argue that it is indisputable based on the allegations of the Amended Complaint that Plaintiff knew, or with the exercise of due diligence should have known, of the injury in question within the limitations period and so the discovery rule should not apply.

We agree with Defendants. Even taking as true Plaintiff's assertion that he did not experience pain from his injuries until months after October 14, 2020, all this establishes is that Plaintiff did not know the full extent of his injury until months later. This allegation is legally insufficient to plead that the discovery rule applies as Pennsylvania law does not require a Plaintiff to know the full extent of his injury.[78] To the extent Plaintiff attempts to argue that his injury was not discoverable because

---

[76] *Rice*, 255 A.3d at 251.

[77] *Perelman*, 545 F. App'x at 151 (quoting *Oshiver*, 38 F.3d at 1391) (internal quotation marks omitted).

[78] *Rice*, 255 A.3d at 251.

he did not know the full names and badge numbers of the Officers who so injured him, the discovery rule is not applicable in cases where, as here, a plaintiff is uncertain about who caused his injury.[79]

Moreover, as discussed more extensively above in our discussion of fraudulent concealment, Plaintiff has pleaded affirmative facts in his Amended Complaint that show he knew of his injuries by October 17, at the latest. Again, Plaintiff pleads in his Amended Complaint that he was aware at the scene and Kapacs and Zarick's lie to the EMS shocked his conscience, that he was aware he was being arrested and searched in the back of the ambulance, that he was then informed on October 17, 2020 that he had suffered a collapsed lung and aspiration pneumonia due to the excessive force used Kapacs and Zarick used, and that he had been arrested by Kapacs and Zarick on October 14, 2020, and that on October 17, 2020 he discovered some of his items had been taken as the result of his arrest and he was taken to court and arraigned. (Doc. 11, pp. 3-6).

Thus, Plaintiff's injuries were clearly discoverable during the limitations period as Plaintiff's Amended Complaint pleads facts that, taken as true as Plaintiff urges, establish Plaintiff did in fact actually know of his injuries giving rise to his excessive force, unreasonable search, false arrest, substantive due process, equal protection and *Monell* claims within the limitations period. Accordingly, Plaintiff

---

[79] *Landau*, 2019 WL 3521421, at *20.

has not pleaded the applicability of the discovery rule as he must and has instead pleaded facts that show the discovery rule does not apply in this case.[80]

For the reasons described above, "Plaintiff has not made any allegations necessary to invoke any of the Pennsylvania tolling doctrines" to preserve his § 1983 claims.[81] Plaintiff has instead "effectively plead[ed] [him]self out of court by alleging facts that are sufficient to establish the [statute of limitations] defense" by pleading clear allegations that he knew of his injuries and their causes within the limitations period, making his claims untimely.[82] Accordingly, taking as true all facts pleaded by Plaintiff and asserted in his Brief in Opposition and Sur Reply Brief, and construing them in the light most favorable to him, it is evident on the face of Plaintiff's Amended Complaint that his § 1983 excessive force, unreasonable search, false arrest, substantive due process, equal protection and *Monell* claims are barred by the statute of limitations. Accordingly, we will recommend these claims be dismissed.

---

[80] *Perelman*, 545 F. App'x at 151 (quoting *Oshiver*, 38 F.3d at 1391) (internal quotation marks omitted).

[81] *Garcia-Valentie v. McKibbin*, No. 06-5097, 2007 WL 2022067, at *5 (E.D. Pa. July 9, 2007) (citing *Zlotnick v. Painewebber Inc.*, 1992 U.S. Dist. LEXIS 6780, at *10 (E.D. Pa. May 14, 1992) ("dismissing complaint because statute of limitations had run and complaint lacked allegations to establish factual basis for tolling")).

[82] *Hollander*, 457 F.3d at 691 n.1. *See Schmidt*, 770 F.3d at 251.

### E.　PLAINTIFF'S FOURTH AMENDMENT MALICIOUS PROSECUTION CLAIM

Plaintiff brings a claim for malicious prosecution against Defendants Kapacs and Zarick, alleging that they lacked probable cause to arrest him, and so that seizure occurred "as a result of the malicious prosecution" and occurred "chronologically after the pressing of charges[.]" (Doc. 11, p. 5). Defendants argue that Plaintiff has failed to state a malicious prosecution claim because he "does not provide any facts supporting the allegations that Defendants did not have probable cause, evidenced any actual malice, or that the underlying proceedings were terminated in Plaintiff's favor." (Doc. 30, p. 13). Plaintiff replies that based on "the above stated allegations and or facts" in his Brief in Opposition, he has stated a malicious prosecution claim. (Doc. 32, ¶¶14). In reply, Defendants reassert Plaintiff's failure to state a malicious prosecution claim. (Doc. 33, pp. 5-6). In his Sur Reply Brief, Plaintiff again asserts that he has stated a malicious prosecution claim. (Doc. 34, ¶¶ 28-30).

We agree with Defendants that Plaintiff has failed to state a claim for malicious prosecution.

> A plaintiff asserting a malicious prosecution claim must establish that "(1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in the plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the

plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding.[83]

In establishing the second element, in *Thompson v. Clark*, the Supreme Court held a plaintiff need not show "the criminal prosecution ended with some affirmative indication of innocence," only that it did not end with a conviction.[84] For the second element a Plaintiff may also show that his conviction was invalidated within the meaning of *Heck*.[85] As to the fifth element, "the alleged seizure must occur as a result of the malicious prosecution, and thus, it must occur chronologically after the pressing of charges."[86]

In this case, Plaintiff cannot escape the reality that his attempt to state a malicious prosecution claim is fundamentally flawed. Plaintiff did not plead in his Amended Complaint that his criminal prosecution ended in his favor or that his conviction was invalidated. Nor does anything else pleaded in the Amended Complaint give the Court the ability to reasonably infer he could make such a showing. Plaintiff does not provide any information concerning the status of his relevant criminal case. Therefore, we find that Plaintiff has not stated a malicious prosecution claim and will accordingly recommend this claim be dismissed.

---

[83] *Wenhold v. Gaglione*, No. 23-CV-1513, 2024 WL 776700, at *6 (E.D. Pa. Feb. 26, 2024) (quoting *McKenna v. City of Philadelphia*, 582 F.3d 447, 461 (3d Cir. 2009)) (internal quotation marks omitted).

[84] *Thompson v. Clark*, 596 U.S. at 49.

[85] *McDonough*, 588 U.S. at 119-20.

[86] *Basile v. Twp. of Smith*, 752 F.Supp. 2d.643, 659 (W.D. Pa. 2010).

### F.    PLAINTIFF'S FIRST AMENDMENT RETALIATION CLAIM

Plaintiff brings a retaliation claim against Defendant Marchese, alleging that, after Plaintiff asked for information about Kapacs and Zarick and requested his belongings back Marchese threatened that if he did not leave he would be arrested. (Doc. 11, p. 7). Defendants argue that Plaintiff fails to state a First Amendment retaliation claim because Plaintiff does not allege how he was retaliated against by Marchese. (Doc. 30, p. 15). In response, Plaintiff argues that Marchese's threats establish his claim. (Doc. 32, ¶ 22). Defendants reply that Plaintiff is making legal conclusions and has not even identified any protected conduct. (Doc. 33, p. 5). Plaintiff argues in response that "based off" Marchese's "threats of arrest to plaintiff for attempting to exercise his right. His misconduct did so violate plaintiff protective activity through retaliation . . . ." (Doc. 34, ¶ 14).

We again agree with Defendants that Plaintiff has failed to state a claim for retaliation.

> [T]o state a claim of retaliation under the First Amendment, a plaintiff must show: "(1) that [he] engaged in a protected activity, (2) that defendant[']s retaliatory action was sufficient to deter a person of ordinary firmness from exercising his or her rights, and (3) that there was a causal connection between the protected activity and the retaliatory action."[87]

---

[87] *Payne v. Stanbaugh*, No. 1:22-CV-2063, 2025 WL 287243, at *4 (M.D. Pa. Jan. 6, 2025), *report and recommendation adopted*, No. 1:22-CV-2063, 2025 WL 285330 (M.D. Pa. Jan. 23, 2025) (quoting *McAndrew v. Bucks Cnty. Bd. of Comm'rs*, 183 F.Supp.3d 713, 737 (E.D. Pa. 2016)) (internal quotation marks omitted) (alternations in original).

It appears from Plaintiff's Amended Complaint that he is alleging that his asking for information on Kapacs and Zarick and for the return of his belongings was his protected conduct. (Doc. 11, p. 7). Plaintiff alleges that Marchese retaliated against him "not just [by] his threats but the hindering of requested information[.]" *Id.* Plaintiff alleges that the threats and "hindering of requested information was sufficient to deter me of ordinary firmness from exercising my const [sic] right and last but not least a causal nexus existed between the protected activity and the retaliation." *Id.* Assuming *arguendo* that asking for the information and his belongings is protected conduct, Plaintiff's nevertheless fails to state a retaliation claim.

First, to the extent that Plaintiff asserts Marchese's threats that Plaintiff would be arrested if he did not leave were adverse actions, "[i]t is well-settled, [] that verbal harassment or threats, even if acted upon, do not constitute adverse action for purposes of establishing a First Amendment retaliation claim."[88] Accordingly, Marchese's threats cannot support a retaliation claim.

That leaves Plaintiff with Marchese's refusal to give him information as his alleged adverse action. Plaintiff recites that "the hindering of requested information was sufficient to deter me of ordinary firmness from exercising my const[itutional]

---

[88] *Muhammad v. Brown*, No. 4:23-CV-212, 2024 WL 3540991, at *4 (M.D. Pa. July 25, 2024) (collecting cases).

right[.]" (Doc. 11, p. 7). However, whether Plaintiff was deterred is not the question.[89] Instead, the inquiry is whether the retaliatory action was sufficient "to deter a person of ordinary firmness from exercising his or her rights."[90] "We ask whether the act would deter a person of ordinary firmness, not whether the plaintiff was deterred."[91] Plaintiff does not allege facts supporting how Marchese's refusal to give information would have deterred a person of ordinary firmness from exercising their rights. Instead, Plaintiff has only concluded, and irrelevantly so, that he was deterred. (Doc. 11, p. 7). This is an attempt at a "formulaic recitation of" one of the elements of a retaliation claim, and even if Plaintiff had properly recited that not providing him the information would deter a person of ordinary firmness, such a recitation is legally insufficient to state a claim.[92] Accordingly, Plaintiff has failed to state a First Amendment retaliation claim and we will recommend its dismissal.

---

[89] *Mirabella v. Villard*, 853 F.3d 641, 650 (3d Cir. 2017).

[90] *Payne*, 2025 WL 287243, at *4 (quoting *McAndrew*, 183 F.Supp.3d at 737) (internal quotation marks omitted).

[91] *Mirabella*, 853 F.3d at 650. "There is good reason for such a rule: we will not 'reward' government officials for picking on unusually hardy speakers. At the same time, we recognize that government officials should not be liable when the plaintiff is unreasonably weak-willed . . . ." *Id.* (quoting *Bennett v. Hendrix*, 423 F.3d 1247, 1252 (11th Cir. 2005) (citation omitted)) (internal quotation marks omitted). *See also Noonan v. Kane*, 698 F. App'x 49, 54 n.4 (3d Cir. 2017)

[92] *Iqbal*, 556 U.S. at 678.

### G.    PLAINTIFF'S FOURTEENTH AMENDMENT PROCEDURAL DUE PROCESS CLAIM

Plaintiff brings claims against Kapacs and Zarick for the violation of his Fourteenth Amendment procedural due process right. Plaintiff alleges that "procedures available to me there and after did not provide due process of law." (Doc. 11, p. 3). Plaintiff concludes that Kapacs and Zarick violated his procedural due process right and that Kapacs "completely deprived me of an individual interest that is encompassed within the 14th Amendment protection" with no factual development. *Id.* Defendants argue that the Amended Complaint fails to allege any procedural due process right Plaintiff was deprived of and instead "baldly states" he was deprived of his procedural due process right and that Kapacs and Zarick deprived him of an individual interest encompassed within the Fourteenth Amendment's protection of life, liberty and property. (Doc. 30, pp. 15-16). In his Brief in Opposition Plaintiff elaborates for the first time that "procedures such as the Pennsylvania Response Immunity Act 35 PA Stat Ann § 780 1137 (WL) was not granted" to him, and this "deprived Plaintiff of [] his [] [] procedural due process an individual interest that is encompassed within the Fourteenth Amendment protection of life liberty and property due process right." (Doc. 32, ¶ 19). Even if the Court were to consider this elaboration, it would not change our conclusion that Plaintiff has failed to state a procedural due process claim.

"To state a claim under § 1983 for deprivation of procedural due process rights, a plaintiff must allege that (1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of life, liberty, or property, and (2) the procedures available to him did not provide due process of law."[93] "Procedural due process requires that individuals receive the opportunity to be heard at a meaningful time and in a meaningful manner when they are impacted by government action."[94]

First, Plaintiff has not alleged what specific interest encompassed within the Fourteenth Amendment's protection of life, liberty or property he was deprived of. Plaintiff simply concludes that Kapacs and Zarick "completely deprived" him "of an individual interest encompassed within the 14th Amendment protection of life, liberty and property." (Doc. 11, p. 3). There is no identification of that individual interest. Instead, this is merely a recitation of one of the elements of a procedural due process claim. Such a recitation is legally insufficient to state a claim.[95] Plaintiff makes the same generic statement in his Brief in Opposition, that he was deprived of "an individual interest" without identifying what interest that is. (Doc. 32, ¶ 19).

---

[93] *King v. City of Phila.*, 654 F. App'x 107, 111 (3d Cir. 2016) (quoting *Hill v. Borough of Kutztown*, 455 F.3d 225, 233-34 (3d Cir. 2006)).
[94] *Halchak v. Dorrance Twp. Bd. of Supervisors*, 646 F.Supp.3d 571, 593 (M.D. Pa. 2022) (quoting *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976)) (internal quotation marks omitted).
[95] *Iqbal*, 556 U.S. at 678.

*Id.* Stating a procedural due process claim requires a specific identification of the interest Plaintiff was deprived of, not just a generic statement that he was deprived of an interest, leaving the Court and Defendants to guess what specific interest that is.

Second, Plaintiff does not clearly allege what procedures were available to him that did not provide him due process of law. It appears Plaintiff may think that the immunity provision he cites to is itself a procedure he was due, however, it is a law. The applicability of such immunity to Plaintiff must be litigated in his criminal trial which would presumably provide him with procedural due process. Further, Plaintiff does not allege how he was not given an opportunity to be heard at a meaningful time and in a meaningful manner regarding the applicability of such immunity. Nor does Plaintiff suggest the statute requires him to be given some sort of procedure before his arrest that he was deprived of. Plaintiff simply does not plead what procedures were available to him and how they were insufficient or that he was altogether deprived of any legal process. Because Plaintiff has not pleaded sufficient facts regarding either of the two elements of a procedural due process claim and instead merely recites the elements of such a claim, he has failed to state a procedural due process claim and we will recommend this claim be dismissed.

## H.    PLAINTIFF'S REQUEST FOR PUNITIVE DAMAGES

Defendants argue that Plaintiff cannot recover punitive damages from governmental employees in their official capacities and, as Plaintiff sues Defendants in their official capacities, Plaintiff's claim for punitive damages should be dismissed. (Doc. 30, p. 19). Plaintiff does not appear to respond to this argument. Because we will recommend dismissal of all of Plaintiff's claims for other reasons we need not address this argument, however, we will do so briefly. Defendants are correct that, to the extent Plaintiff sues them in their official capacities that is essentially a suit against the municipality they are agents of,[96] and municipalities are immune from punitive damages under § 1983.[97] Therefore, Plaintiff's claim for punitive damages against Defendants in their official capacities should be dismissed, with prejudice. To the extent Plaintiff seeks punitive damages under § 1983 against Defendants in their individual capacities, such damages are available in § 1983 cases "where the defendants have acted with a reckless or callous disregard of, or indifference to, the rights and safety of others."[98] Because Plaintiff has not stated any claims against Defendants, however, he has no claim for punitive damages against them.

---

[96] *Hafer*, 502 U.S. at 25.
[97] *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981).
[98] *Butler v. Upper Merion Twp.*, No. CV 22-3638, 2025 WL 417338, at *8 (E.D. Pa. Feb. 6, 2025) (quoting *Bennis v. Gable*, 823 F.2d 723, 734 (3d Cir. 1987)) (internal quotation marks omitted).

## V.    LEAVE TO AMEND

If a civil rights complaint is subject to dismissal for failure to state a claim, "a district court must permit a curative amendment unless such an amendment would be inequitable or futile."[99] It is true that Plaintiff has already amended once, however Plaintiff filed a motion to amend that we denied because of his failure to attach a proposed amended complaint, but Defendants did not file any opposition or objection to Plaintiff's Motion, nor do they seek dismissal with prejudice. While it appears that most of the defects in Plaintiff's complete are purely legal, and amendment is therefore likely futile, given the Third Circuit's penchant for granting leave to amend in civil rights cases, we will recommend that Plaintiff's claims be dismissed without prejudice at this time. We will also recommend Plaintiff be given leave to file a motion to amend if he believes he can sufficiently assert timely claims, and that he be required to attach a copy of his proposed second amended complaint to his motion.[100]  If Plaintiff does not file a motion to amend, we recommend that Plaintiff's excessive force, unreasonable search, false arrest, substantive due process, equal protection and *Monell* claims be converted to a dismissal with

---

[99] *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008).

[100]  Although Local Rule 15.1(b) requires a party moving for amended to provide a copy of the original pleading in which the stricken material has been lined through and any new material be underlined or bolded, given that Plaintiff is proceeding *pro se* and is handwriting his filings, we recommend he should not be required to provide such a redlined copy.

prejudice but that his malicious prosecution, retaliation and procedural due process claims remain dismissed without prejudice.

## VI.    RECOMMENDATION

Accordingly, it is recommended that:

(1)    Defendants' Motion to Dismiss, (Doc. 27), be GRANTED and this case be dismissed without prejudice.

(2)    Plaintiff be given leave to file a motion to amend with the requirement he attach a copy of his proposed second amended complaint thereto.

(3)    In the event Plaintiff fails to file a motion to amend, the dismissal of Plaintiff's excessive force, unreasonable search, false arrest, substantive due process, equal protection and *Monell* claims be converted to a dismissal with prejudice and the dismissal of Plaintiff's malicious prosecution, retaliation and procedural due process claims remain dismissed without prejudice and the Clerk of Court be ordered to mark this case CLOSED.

Date: March 11, 2025                    BY THE COURT

                                        *s/William I. Arbuckle*
                                        William I. Arbuckle
                                        U.S. Magistrate Judge

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JEREMY H. BATTLE, | ) | CIVIL NO. 3:23-CV-00666 |
| Plaintiff | ) | |
| | ) | (MUNLEY, D.J.) |
| v. | ) | |
| | ) | (ARBUCKLE, M.J.) |
| SALVATORE MARCHESE, *et al.*, | ) | |
| Defendants | ) | |

## NOTICE OF LOCAL RULE 72.3

NOTICE IS HEREBY GIVEN that any party may obtain a review of the Report and Recommendation pursuant to Local Rule 72.3, which provides:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses, or recommit the matter to the magistrate judge with instructions.

Date: March 11, 2025

BY THE COURT

*s/William I. Arbuckle*
William I. Arbuckle
U.S. Magistrate Judge