UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JEREMY H. BATTLE, | ) | CIVIL NO. 3:23-CV-00666 |
| Plaintiff | ) | |
| | ) | (MUNLEY, D.J.) |
| v. | ) | |
| | ) | (ARBUCKLE, M.J.) |
| SALVATORE MARCHESE, *et al.*, | ) | |
| Defendants | ) | |

## REPORT AND RECOMMENDATION

## I.    INTRODUCTION

Plaintiff Jeremy H. Battle sues three Police Officers, alleging numerous violations of his constitutional rights pursuant to 42 U.S.C. § 1983. These claims stem from an incident where Officers found Plaintiff experiencing a narcotics overdose and the resulting aftermath.

## II.    BACKGROUND AND PROCEDURAL HISTORY

This *pro se*, *in forma pauperis* action began on April 21, 2023, when Plaintiff lodged his Complaint. (Doc. 1). On the same day, Plaintiff filed a Motion to Proceed *in forma pauperis*, (Doc. 2), which the Court granted on April 27, 2023, (Doc. 7). On July 18, 2023, the Court screened Plaintiff's Complaint pursuant to 28 U.S.C. § 1915(e), finding that it failed to state a claim upon which relief could be granted, and gave Plaintiff leave to file an amended complaint. (Doc. 10). On August 18, 2023, Plaintiff filed his Amended Complaint. (Doc. 11).

The Amended Complaint was served, and on December 5, 2023, Defendants filed a Motion to Dismiss. (Doc. 27). On March 11, 2025, the undersigned issued a Report and Recommendation recommending that Defendants' Motion to Dismiss be granted but that Plaintiff be given leave to file a motion to amend. (Doc. 43). On April 4, 2025, Judge Munley issued an Order adopting the Report and Recommendation in part, granting Defendants' Motion and granting Plaintiff leave to file a second amended complaint. (Doc. 44).

On April 28, 2025, Plaintiff filed a Second Amended Complaint. ("SAC"). (Doc. 45). On April 29, 2025, Judge Munley referred the case back to the undersigned for preliminary screening and issuance of a report and recommendation.

Plaintiff names as Defendants Linsay Zarick and Daniel Kapacs, Dunmore Police Officers. (Doc. 45, p. 1). Although Plaintiff does not specifically reference Salvatore Marchese, the Dunmore Chief of Police, as a Defendant, given his *pro se* status, naming of Marchese as a Defendant previously, and assertion of a claim based on Marchese's conduct, we will construe the SAC as naming him a Defendant.

Plaintiff alleges that on October 14, 2020, Zarick found him in a car speaking incoherently. (Doc. 45, p. 1). While Plaintiff was still in the vehicle, Zarick patted him down and requested EMS. *Id.* Before EMS arrived, Zarick and Kapacs pulled Plaintiff from the car and set him on the pavement. *Id.* Zarick then went to the patrol car and retrieved an EpiPen. *Id.* Zarick asked Kapacs if he knew how to administer

the EpiPen and Kapacs took it from Zarick, rolled Plaintiff onto his side, and administered the EpiPen on Plaintiff's side, causing the liquid inside the EpiPen to be injected into Plaintiff's right lung. *Id.*

Plaintiff then began to experience sharp pain and began vomiting and seizing, and eventually passed out. (Doc. 45, p. 2). When Plaintiff regained consciousness, he was still vomiting and was  rolled on his back by Kapacs and Zarick, causing him to aspirate and eventually contract aspiration pneumonia. *Id.* Plaintiff alleges that Kapacs and Zarick's lack of training was grossly negligent and that they should have been trained to know the signs of an overdose as part of their training. *Id.*

EMS then arrived on scene and asked Kapacs and Zarick whether they had rendered any medical aid to Plaintiff, and they lied and denied doing so. (Doc. 45, p. 2). Plaintiff alleges this shows a lack of training and that this conduct denied him proper medical care. *Id.* While still under the care of EMS, Plaintiff alleges Kapacs began an illegal search and seizure of Plaintiff, turning off his body camera to hide his actions which included a search of Plaintiff's genitalia. *Id.* Plaintiff alleges he had no reasonable expectation he could leave the area because he was strapped down in an ambulance at the time of the search and that he could not consent because of his medical emergency. (Doc. 45, p. 3).

Once Plaintiff arrived at the hospital, he was in a coma for approximately three days as a result of the improper use of the EpiPen. (Doc. 45, p. 3). Plaintiff

woke from the coma on October 17, 2020 and was told of his injuries, including a collapsed lung and aspiration pneumonia, and that he could not leave because he had been arrested by Kapacs and Zarick. *Id.* He was also informed his belongings were seized. *Id.* Plaintiff attempted to leave the hospital but was arrested by Scranton Police who filed charges for his attempting to leave the hospital. *Id.*

Plaintiff alleges that Defendants did not have probable cause to arrest him because he was suffering a medical condition at the time of the arrest. (Doc. 45, p. 3). At some point Plaintiff was apparently taken to the Lackawanna County Prison where he remained for months. (Doc. 45, p. 4). Once released, Plaintiff when to the Dunmore Police Station to retrieve his property and file a complaint against Kapacs and Zarick. *Id.*

At the Station he was greeted by Marchese, who denied Kapacs and Zarick's actions and would not provide Plaintiff with their information. (Doc. 45, p. 4). Plaintiff alleges Marchese then ordered him to leave. *Id.*

## III.   LEGAL STANDARDS

### A.   STATUTORY SCREENING OBLIGATION UNDER 28 U.S.C. § 1915(E)

This Court has a statutory obligation to conduct a preliminary review of *pro se* complaints brought by litigants given leave to proceed *in forma pauperis*. Specifically, the Court is obliged to review the complaint in accordance with 28 U.S.C. § 1915(e)(2), which provides, in pertinent part:

(2) Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that –

> (A) the allegation of poverty is untrue; or

> (B) the action or appeal--

>> (i) is frivolous or malicious;

>> (ii) fails to state a claim on which relief may be granted; or

>> (iii) seeks monetary relief against a defendant who is immune from such relief.

When conducting this screening analysis, district courts apply the standard governing motions to dismiss filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.[1] At this early stage of the litigation, the district court must: "accept the facts alleged in [a plaintiff's] complaint as true," "draw[ ] all reasonable inferences in [their] favor," and "ask only whether [that] complaint, liberally construed, . . . contains facts sufficient to state a plausible . . . claim."[2] A court need not "credit a complaint's 'bald assertions' or 'legal conclusions,'"[3] and does not need

---

[1] *See e.g.*, *Endrikat v. Ransom*, No. 1:21-CV-1684, 2022 WL 4111861, at *2 (M.D. Pa. Sept. 8, 2022) ("In dismissing claims under §§ 1915(e), 1915A, and 1997e, district courts apply the standard governing motions to dismiss filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.").

[2] *Shorter v. United States*, 12 F. 4th 366, 374 (3d Cir. 2021) (quoting *Perez v. Fenoglio*, 792 F.3d 768, 774, 782 (7th Cir. 2015)).

[3] *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (internal quotation marks omitted).

to assume that a plaintiff can prove facts not alleged.[4]

In considering a motion to dismiss and in screening complaints under 28 U.S.C. § 1915(e), the court generally relies on the complaint, attached exhibits, and matters of public record.[5] At the motion to dismiss stage, the court accepts the complaint's factual allegations as true, but the court does not accept a plaintiff's legal conclusions.[6] In addition, "[d]etermining whether a complaint states a plausible claim for relief" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[7]

The federal pleading standard just described requires that district courts conduct the following analysis when addressing a motion to dismiss a complaint:

> First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. [*Iqbal*, 129 S.Ct. at 1949]. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." *Id.* at 1950. In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts. *See Phillips*[ *v. Cnty. Of Allegheny*, 515 F.3d 224, 234–35 (3d Cir. 2008)].[8]

---

[4] *Associated Gen. Contractors of Cal. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

[5] *Sands v. McCormick*, 502 F.3d 263, 268 (3d Cir. 2007).

[6] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

[7] *Id.* at 679.

[8] *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009).

A *pro se* litigant, however, is entitled to have their complaint liberally construed. This requires that we hold the complaint to a less stringent standard than a pleading drafted by a licensed attorney.[9] "Liberal construction of *pro se* pleadings means paying attention to what the litigant has alleged and using common sense."[10] The Court may "apply the relevant legal principle even when the complaint has failed to name it," but cannot supply what plaintiff has not alleged or imagine that unpleaded facts exist.[11]

### B.    CIVIL RIGHTS CLAIMS BROUGHT PURSUANT TO 42 U.S.C. § 1983

"Section 1983 imposes civil liability upon any person who, acting under the color of state law, deprives another individual of any rights, privileges, or immunities secured by the Constitution or laws of the United States."[12] "It is well settled that § 1983 does not confer any substantive rights, but merely 'provides a method for vindicating federal rights elsewhere conferred.'"[13] To prove a claim under § 1983, a plaintiff must establish: (1) a deprivation of a federally protected

---

[9] *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

[10] *Gindraw v. Sanford*, No. 3:24-CV-65-KAP, 2024 WL 3179781, at *2 (W.D. Pa. June 26, 2024).

[11] *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (quoting *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)); *Gindraw*, 2024 WL 3179781, at *2.

[12] *Shuman v. Penn Manor Sch. Dist.*, 422 F.3d 141, 146 (3d Cir. 2005) (citing *Gruenke v. Seip*, 225 F.3d 290, 298 (3d Cir. 2000)).

[13] *Williams v. Pa. Hum. Rel. Comm'n*, 870 F.3d 294, 297 (3d Cir. 2017) (quoting *Hildebrand v. Allegheny Cnty.*, 757 F.3d 99, 104 (3d Cir. 2014)).

right; and (2) that the deprivation was committed by a person or persons acting under color of state law.[14]

## IV.    DISCUSSION

### A.    PLAINTIFF'S CLAIMS

We interpret Plaintiff's SAC as asserting 8 claims under 42 U.S.C. § 1983:

(1)    A First Amendment retaliation claim;

(2)    A Fourth Amendment unreasonable search claim;

(3)    A Fourth Amendment false arrest claim for his arrest on October 14, 2020;

(4)    A Fourth Amendment malicious prosecution claim;

(5)    A Fourteenth Amendment procedural due process claim;

(6)    A Fourteenth Amendment substantive due process claim;

(7)    A Fourteenth Amendment equal protection claim; and

(8)    A *Monell* claim for failure to train.

(Doc. 45). Plaintiff brings his claims against Defendants in both their individual and official capacities.

---

[14] *Woloszyn v. Cnty. of Lawrence*, 396 F.3d 314, 319 (3d Cir. 2005) (quoting *Lake v. Arnold*, 112 F.3d 682, 689 (3d Cir. 1997)).

### B.    PLAINTIFF'S FOURTH AMENDMENT UNREASONABLE SEARCH AND FOURTEENTH AMENDMENT SUBSTANTIVE DUE PROCESS CLAIMS ARE BARRED BY THE APPLICABLE STATUTE OF LIMITATIONS

"[T]he length of the statute of limitations for a § 1983 claim is governed by the personal injury tort law of the state where the cause of action arose."[15] Plaintiff's claims arose in Pennsylvania. Pennsylvania has a two-year statute of limitations for personal injury caused by tortious conduct, meaning the statute of limitations for a § 1983 claim that arose in Pennsylvania is two years.[16] However, "[f]ederal law, not state law, determines when a limitations period begins to run. Under federal law, the statute of limitations runs from the moment that a claim accrues. And a claim accrues when the last act needed to complete the tort occurs."[17]

"When screening a complaint under section 1915, a district court may sua sponte dismiss the complaint as untimely under the statute of limitations where the defense is obvious from the complaint and no development of the factual record is required."[18]

Plaintiff's unreasonable search claim is untimely. Plaintiff pleads that Kapacs illegally searched him while he was being treated by EMS on October 14, 2020, with

---

[15] *Kach v. Hose*, 589 F.3d 626, 634 (3d Cir. 2009) (citing *Wallace v. Kato*, 549 U.S. 384, 387 (2007)).

[16] 42 Pa. C.S. § 5524.

[17] *Nguyen v. Pennsylvania*, 906 F.3d 271, 273 (3d Cir. 2018) (internal citations omitted).

[18] *Brown v. Buck*, 614 F. App'x 590, 592 (3d Cir. 2015).

Kapacs turning off his body camera to hide his illegal search. (Doc. 45, pp. 2-3). Plaintiff's SAC indicates that Plaintiff knew about the search at the time it was occurring, stating that he did not have a reasonable belief he could leave the area because he was having a medical emergency. (Doc. 45, p. 3). Under federal law, a claim for an unreasonable search accrues at "the moment of the search."[19] Here, Plaintiff specifically pleads and it is thus evident from the face of the SAC that the search occurred on October 14, 2020. October 14, 2020 is therefore the date this claim accrued and the statute of limitations began running. Plaintiff had two years from October 14, 2020 to file his claims. Plaintiff filed his Complaint on April 21, 2023, over six months after the statute of limitations ran, and so his unreasonable search claim is untimely. Accordingly, we will recommend this claim be dismissed.

Plaintiff's substantive due process claim is also untimely. While the contours of Plaintiff's substantive due process claim are murky, we construe Plaintiff as alleging Kapacs and Zarick violated his substantive due process right when they lied by denying they provided any care to Plaintiff when asked by EMS. (Doc. 45, p. 2). Plaintiff alleges this behavior was "conscious shocking[.]' *Id.* "To establish a substantive due process claim, a plaintiff must prove [1] the particular interest at issue is protected by the substantive due process clause and [2] the government's

---

[19] *Nguyen*, 906 F.3d at 273.

deprivation of that protected interest shocks the conscience."[20] Plaintiff's SAC alleges that Kapacs and Zarick's act of lying occurred on October 14, 2020, and that act of lying deprived him of an interest protected by the substantive due process clause. *Id.* Accordingly, Kapacs and Zarick completed the last act necessary to deprive Plaintiff of his substantive due process right on October 14, 2020, and so his substantive due process claim accrued on that date and the statute of limitations began to run.[21] Plaintiff therefore had two years from October 14, 2020 to bring his substantive due process claim. Again, Plaintiff filed his Complaint on April 21, 2023, more than six months too late, and accordingly it is evident on the face of the SAC his substantive due process claim is untimely. Therefore, we will recommend this claim be dismissed.

### C.    PLAINTIFF'S FOURTH AMENDMENT FALSE ARREST CLAIM

Plaintiff brings a false arrest claim, alleging that "Defendants did not have probable cause" to arrest him. (Doc. 24, p. 3). Plaintiff alleges he was arrested by Kapacs and Zarick on October 14, 2020, and arrested again when he tried to leave the hospital on October 17, 2020, by the Scranton Police. (Doc. 45, p. 3). Immediately after discussing his arrest by Scranton Police, Plaintiff writes that "the

---

[20] *Hazzouri v. W. Pittston Borough*, 416 F.Supp.3d 405, 416 (M.D. Pa. 2019) (quoting *Chambers ex rel. Chambers v. Sch. Dist. of Phila. Bd Of Educ.*, 587 F.3d 176, 190 (3d Cir. 2009) (quoting *Chainey v. Street*, 523 F.3d 200, 219 (3d Cir. 2008))) (internal quotation marks omitted) (alternation in original).

[21] *Nguyen*, 906 F.3d at 273 (internal citations omitted).

Defendants did not have probable cause as Plaintiff was suffering a medical condition at the time of his arrest" and "[t]his action resulted in the Plaintiff's arrest, which Plaintiff contends is a False Arrest Action[.]" (Doc. 45, pp. 3-4). It is unclear whether Plaintiff's false arrest claim is related to the October 14, 2020, arrest or the October 17, 2020, arrest. This confusion alone is sufficient to dismiss Plaintiff's false arrest claim as it leaves both the Court and Defendants guessing what actions Plaintiff believes give rise to his false arrest claim.[22] However, because Plaintiff references Defendants when discussing whether there was probable cause, we construe the SAC as asserting a false arrest claim related to his October 14, 2020 arrest.

"To bring a claim for false arrest, a plaintiff must establish (1) that there was an arrest; and (2) that the arrest was made without probable cause."[23] In the SAC, Plaintiff baldly alleges that "Defendants did not have probable cause, as Plaintiff was suffering a medical condition at the time of his arrest." (Doc. 45, p. 3). This is a legal conclusion that we need not, and do not, credit.[24] The fact that Plaintiff was suffering from a medical condition, even a medical emergency, at the time of his arrest does not mean, by itself, that Kapacs or Zarick lacked probable cause to arrest

---

[22] *Binsack v. Lackawanna Cnty. Prison*, 438 F. App'x 158, 160 (3d Cir. 2011).

[23] *Harvard v. Cesnalis*, 973 F.3d 190, 199 (3d Cir. 2020) (quoting *James v. City of Wilkes-Barre*, 700 F.3d 675, 680 (3d Cir. 2012)) (internal quotation marks omitted).

[24] *Morse*, 132 F.3d at 906.

him. Plaintiff pleads no other facts from which we can infer Kapacs and Zarick lacked probable cause to arrest him. Thus, we will recommend his false arrest claim be dismissed.

### D. PLAINTIFF'S FOURTH AMENDMENT MALICIOUS PROSECUTION CLAIM

Plaintiff also purports to bring a claim for malicious prosecution against Defendants Kapacs and Zarick. Initially, as with Plaintiff's false arrest claim, it is unclear which charges Plaintiff believes underlies his malicious prosecution claim. Again, Plaintiff alleges that he was arrested by Kapacs and Zarick on October 14, 2020, and was then arrested again when he tried to leave the hospital on October 17, 2020, by the Scranton Police. (Doc. 45, p. 3). Immediately after discussing his arrest by Scranton Police, Plaintiff writes that "the Defendants did not have probable cause as Plaintiff was suffering a medical condition at the time of his arrest" and "[t]his action resulted in the Plaintiff's arrest, which Plaintiff contends is a False Arrest Action, which thereby resulted in malicious prosecution of the Plaintiff in further violation of Plaintiff's rights." (Doc. 3, pp. 3-4). It is unclear whether Plaintiff's malicious prosecution claim is related to the charges stemming from his October 14, 2020, arrest or his October 17, 2020, arrest. As with his false arrest claim, this confusion alone is sufficient to dismiss Plaintiff's malicious prosecution claim for failure to state a claim as it leaves both the Court and Defendants guessing what

actions Plaintiff believes give rise to a malicious prosecution claim.[25] Again, however, because Plaintiff references Defendants we construe the SAC as asserting a malicious prosecution claim related to the charges stemming from his October 14, 2020 arrest.

Plaintiff has failed to plead facts suggesting discovery would reveal evidence of all necessary elements of a malicious prosecution claim.

> A plaintiff asserting a malicious prosecution claim must establish that "(1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in the plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding.[26]

In establishing the second element, in *Thompson v. Clark*, the Supreme Court held a plaintiff need not show "the criminal prosecution ended with some affirmative indication of innocence," only that it did not end with a conviction.[27] For the second element a Plaintiff may also show that his conviction was invalidated within the meaning of *Heck*.[28] As to the fifth element, "the alleged seizure must occur as a result

---

[25] *Binsack*, 438 F. App'x at 160.

[26] *Wenhold v. Gaglione*, No. 23-CV-1513, 2024 WL 776700, at *6 (E.D. Pa. Feb. 26, 2024) (quoting *McKenna v. City of Philadelphia*, 582 F.3d 447, 461 (3d Cir. 2009)) (internal quotation marks omitted).

[27] *Thompson v. Clark*, 596 U.S. 36, 49 (2022).

[28] *McDonough v. Smith*, 588 U.S. 109, 119-20 (2019).

of the malicious prosecution, and thus, it must occur chronologically after the pressing of charges."[29]

After amending for a second time, Plaintiff's attempt to state a malicious prosecution claim remains fundamentally flawed. Plaintiff has again failed to plead that any relevant criminal prosecution ended in his favor or that any relevant conviction was invalidated in his SAC. Nor does anything pleaded in the SAC give the Court the ability to reasonably infer he could make such a showing. Plaintiff does not provide any information concerning the status of his relevant criminal case. Therefore, we find that Plaintiff has not stated a malicious prosecution claim and will accordingly recommend this claim be dismissed.

### E.    PLAINTIFF'S FIRST AMENDMENT RETALIATION CLAIM

Plaintiff alleges that Marchese denied him his First Amendment right when he ordered Plaintiff to leave the Dunmore Police Station after asking for Kapacs and Zarick's information. (Doc. 45, p. 4). The nature of Plaintiff's First Amendment claim is not particularly clear from the SAC. Construing Plaintiff's SAC liberally, we believe Plaintiff is attempting to assert a claim for retaliation.

> [T]o state a claim of retaliation under the First Amendment, a plaintiff must show: "(1) that [he] engaged in a protected activity, (2) that defendant['] s retaliatory action was sufficient to deter a person of ordinary firmness from exercising his or her rights, and (3) that there

---

[29] *Basile v. Twp. of Smith*, 752 F.Supp.2d 643, 659 (W.D. Pa. 2010).

was a causal connection between the protected activity and the retaliatory action."[30]

As best the Court can make out, Plaintiff is alleging his protected activity was asking for Kapacs and Zarick's information and that the retaliatory action was Marchese's order to leave the Police Station. It appears that Plaintiff is alleging that the order was harassing or threatening, as Plaintiff alleges that such no reasonable person would ignore such an order. "It is well-settled, [] that verbal harassment or threats, even if acted upon, do not constitute adverse action for purposes of establishing a First Amendment retaliation claim."[31] Accordingly, as Plaintiff is asserts that Marchese threatened or harassed him into leaving the Police Station, Plaintiff fails to state a claim and we will recommend its dismissal.

## F. PLAINTIFF'S FOURTEENTH AMENDMENT PROCEDURAL DUE PROCESS CLAIM

Plaintiff also purports to bring a procedural due process claim, but we are unable to make out such a claim in the SAC. Plaintiff asserts,

> The officers behavior [in lying to EMS about not rendering Plaintiff any medical aid] was unprofessional, egregious and blatantly outrageous conduct, which is conscience shocking in itself and devoid of proper procedure and shows that there was no training in the correct

---

[30] *Payne v. Stanbaugh*, No. 1:22-CV-2063, 2025 WL 287243, at *4 (M.D. Pa. Jan. 6, 2025), *report and recommendation adopted*, No. 1:22-CV-2063, 2025 WL 285330 (M.D. Pa. Jan. 23, 2025) (quoting *McAndrew v. Bucks Cnty. Bd. of Comm'rs*, 183 F.Supp.3d 713, 737 (E.D. Pa. 2016)) (internal quotation marks omitted) (alternations in original).

[31] *Muhammad v. Brown*, No. 4:23-CV-212, 2024 WL 3540991, at *4 (M.D. Pa. July 25, 2024) (collecting cases).

> procedure when assessing a person who is in medical
> distress/over[dose] possibility.
>
> Their conduct denied Plaintiff of proper care and thereby violated the
> rights of the Plaintiff under the 14th Amendment, which includes
> substantive and procedural due process right and includes the rights of
> Life, Liberty, and the pursuit of happiness, all of which have been
> infringed or endangered by the actions of the defendants in this case.

(Doc. 45, p. 2).

"To state a claim under § 1983 for deprivation of procedural due process rights, a plaintiff must allege that (1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of life, liberty, or property, and (2) the procedures available to him did not provide due process of law."[32] "Procedural due process requires that individuals receive the opportunity to be heard at a meaningful time and in a meaningful manner when they are impacted by government action."[33] Here, Plaintiff has not alleged what specific interest encompassed within the Fourteenth Amendment's protection of life, liberty or property he was deprived of. Instead, he simply concludes that Kapacs and Zarick's conduct violated his Fourteenth Amendment procedural due process right and notes that those rights "include[] the rights of Life, Liberty and the pursuit of happiness[.]"

---

[32] *King v. City of Phila.*, 654 F. App'x 107, 111 (3d Cir. 2016) (quoting *Hill v. Borough of Kutztown*, 455 F.3d 225, 233-34 (3d Cir. 2006)).

[33] *Halchak v. Dorrance Twp. Bd. of Supervisors*, 646 F.Supp.3d 571, 593 (M.D. Pa. 2022) (quoting *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976)) (internal quotation marks omitted).

(Doc. 45, p. 2). This is merely a recitation of one of the elements of a procedural due process claim. Such a recitation is legally insufficient to state a claim.[34] Stating a procedural due process claim requires a specific identification of the interest Plaintiff was deprived of, not just a generic statement that he was deprived of an interest. The SAC leaves the Court and Defendants to guess what specific interest he was deprived of, and so Plaintiff fails to state a procedural due process claim. Accordingly, we will recommend Plaintiff's Fourteenth Amendment procedural due process claim be dismissed.

### G.    PLAINTIFF'S FOURTEENTH AMENDMENT EQUAL PROTECTION CLAIM

Plaintiff attempts to assert an equal protection claim, alleging that "Defendants further violated the 14th Amendment by not granting Equal Protection to the Plaintiff, there was no reasonable basis for the officers [sic] actions and not protecting the rights and health of Plaintiff in this case." (Doc. 45, p. 4). "A plaintiff states a valid equal protection claim when he is either (i) a member of a protected class and was treated differently from members of an unprotected class, or (ii) he belongs to a "class of one" and was treated differently from others similarly situated without any rational basis for the difference in treatment."[35] "When, as here, a plaintiff does not allege that a contested distinction is based on protected

---

[34] *Iqbal*, 556 U.S. at 678.
[35] *Echevarria v. Cnty. of Bergen*, No. 23-3002 (ES) (CLW), 2025 WL 517955, at *9 (D.N.J. Feb. 18, 2025).

classifications such as race, national origin, religion, or gender, their equal protection claim arises under a 'class of one' theory subject to rational-basis review."[36] "According to that theory, a plaintiff states a claim for violation of the Equal Protection clause when he alleges that he has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."[37] To be similarly situated under the Equal Protection Clause, persons must be "alike in all relevant aspects."[38] Here, Plaintiff has provided no basis for his equal protection claim other than to conclude Kapacs and Zarick violated his right to equal protection. Indeed, Plaintiff does not even clearly allege that he was treated differently than anyone, let alone differently than individuals similarly situated. Plaintiff therefore does not state an equal protection claim and we will recommend Plaintiff's equal protection claim be dismissed.

## H.    PLAINTIFF'S *MONELL* CLAIM

Plaintiff also asserts a *Monell* claim apparently stemming from Kapacs and Zarick's lack of overdose awareness and medical training. If a plaintiff wishes to recover under § 1983 from a municipality they must:

(1)    identify a policy or custom that deprived [them] of a federally

---

[36] *M. Rae, Inc. v. Wolf*, 509 F.Supp.3d 235, 246 (M.D. Pa. 2020).

[37] *Hamilton v. Bros.*, No. 2:24-0675, 2025 WL 489677, at *3 (W.D. Pa. Feb. 13, 2025) (quoting *Hill*, 455 F.3d at 239) (internal quotation marks omitted).

[38] *Hamilton*, 2025 WL 489677, at *3 (quoting *Startzell v. City of Phila., Pa.*, 533 F.3d 183, 203 (3d Cir. 2008) (citation omitted)) (internal quotation marks omitted).

protected right;

(2)    demonstrate that the municipality, by its deliberate conduct, acted
       as the "moving force" behind the alleged deprivation; and

(3)    establish a direct causal link between the policy or custom and the
       plaintiff's injury.[39]

A municipality "can only be liable when the alleged constitutional transgression
implements or executes a policy, regulation or decision officially adopted by the
governing body or informally adopted by custom."[40] A policy "is a statement,
ordinance, regulation, or decision officially adopted and promulgated by a
government body's officers."[41] A custom need not be formally adopted by the
municipality but may impose liability where "the relevant practice is so widespread
as to have the force of law."[42]

> In limited circumstances, a local government's decision not to train
> certain employees about their legal duty to avoid violating citizens'
> rights may rise to the level of an official government policy for
> purposes of § 1983. A municipality's culpability for a deprivation of
> rights is at its most tenuous where a claim turns on a failure to train. *See
> Oklahoma City v. Tuttle*, 471 U.S. 808, 822–823 (1985) (plurality
> opinion) ("[A] 'policy' of 'inadequate training' " is "far more nebulous,
> and a good deal further removed from the constitutional violation, than
> was the policy in *Monell* "). To satisfy the statute, a municipality's

---

[39] *Blasi v. Borough of Pen Argyl*, No. 14-1354, 2015 WL 4486717, at *5 (E.D.
Pa. July 23, 2015) (citing *Bd. of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown*, 520
U.S. 397, 404 (1997)).

[40]  *Beck v. City of Pittsburgh*, 89 F.3d 966, 971 (3d Cir. 1996) (citing *Monell
v. Soc. Servs. of City of New York*, 436 U.S. 658 (1978)).

[41] *Beck*, 89 F.3d at 971 (citing *Monell*, 436 U.S. at 690).

[42] *Bd. of Cnty. Comm'rs of Bryan Cnty., Okla.*, 520 U.S. at 404 (citing *Monell*,
436 U.S. at 690-91).

failure to train its employees in a relevant respect must amount to "deliberate indifference to the rights of persons with whom the [untrained employees] come into contact." *Canton*, 489 U.S. at 388. Only then "can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983." *Id.* at 389.

"'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Bryan Cnty.*, 520 U.S. at 410. Thus, when city policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights, the city may be deemed deliberately indifferent if the policymakers choose to retain that program. *Id.* at 407. The city's " 'policy of inaction' " in light of notice that its program will cause constitutional violations "is the functional equivalent of a decision by the city itself to violate the Constitution." *Canton*, 489 U.S., at 395 (O'Connor, J., concurring in part and dissenting in part). A less stringent standard of fault for a failure-to-train claim "would result in *de facto respondeat superior* liability on municipalities . . . ." *Id.* at 392,; *see also Pembaur*, *supra*, at 483 (opinion of Brennan, J.) ("[M]unicipal liability under § 1983 attaches where–and only where–a deliberate choice to follow a course of action is made from among various alternatives by [the relevant] officials . . . .").[43]

 Further, "without an underlying constitutional violation, there can be no *Monell* claim."[44]

Here, Plaintiff has not stated a claim for an underlying constitutional violation. Nor does Plaintiff plead any facts regarding a policy or custom the Dunmore Police Department has. To the extent Plaintiff attempts to bring a *Monell* claim under a

---

[43] *Connick v. Thompson*, 563 U.S. 51, 61-62 (2011) (cleaned up).

[44] *Knellinger v. York St. Prop. Dev., LP*, 57 F.Supp.3d 462, 471 (E.D. Pa. 2014) (citing *Customers Bank v. Mun. of Norristown*, 942 F.Supp.2d 534, 546 (E.D. Pa. 2013)).

failure to train theory, in addition to not stating an underlying constitutional violation, he has not alleged any facts hinting at deliberate indifference as described above. Plaintiff therefore does not state a *Monell* claim and we will recommend that claim be dismissed.

## V.    LEAVE TO AMEND

If a civil rights complaint is subject to dismissal for failure to state a claim, "a district court must permit a curative amendment unless such an amendment would be inequitable or futile."[45] Here, Plaintiff has already been given leave to amend twice and has failed to state any claims. We therefore conclude granting Plaintiff further leave to amend would be futile. However, because it is unclear whether Plaintiff's malicious prosecution claim has accrued,[46] we will recommend that claim be dismissed without prejudice.

[The next page contains the Recommendation]

---

[45] *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008).

[46] "A malicious prosecution claim is not cognizable until favorable termination is achieved, because that is when the 'favorable termination' element of the cause of action is complete." *Blake v. Maletz*, No. 24-CV-6249, 2025 WL 321541, at *5 (E.D. Pa. Jan. 28, 2025). Plaintiff does not allege in the SAC if or when the favorable termination element of his malicious prosecution claim was complete.

## VI.    RECOMMENDATION

Accordingly, it is recommended that:

(1)    Plaintiff's 42 U.S.C. § 1983 claim for malicious prosecution be DISMISSED without prejudice.

(2)    Plaintiff's 42 U.S.C. § 1983 retaliation, unreasonable search, false arrest, procedural due process, substantive due process, equal protection and *Monell* claims be DISMISSED with prejudice.

(3)    The Clerk of Court be directed to mark this case CLOSED.

Date: May 27, 2025                    BY THE COURT

                                      *s/William I. Arbuckle*
                                      William I. Arbuckle
                                      U.S. Magistrate Judge

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JEREMY H. BATTLE, | ) | CIVIL NO. 3:23-CV-00666 |
| Plaintiff | ) | |
| | ) | (MUNLEY, D.J.) |
| v. | ) | |
| | ) | (ARBUCKLE, M.J.) |
| SALVATORE MARCHESE, *et al.*, | ) | |
| Defendants | ) | |

## <u>NOTICE OF LOCAL RULE 72.3</u>

NOTICE IS HEREBY GIVEN that any party may obtain a review of the Report and Recommendation pursuant to Local Rule 72.3, which provides:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses, or recommit the matter to the magistrate judge with instructions.

Date: May 27, 2025

BY THE COURT

*s/William I. Arbuckle*
William I. Arbuckle
U.S. Magistrate Judge